Susan K. Swango
8350 NE Hendricks Road
Carlton, OR 97111

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

## Portland Division

| | |
|---|---|
| Susan K. Swango, | ) Case No.: 3:17-cv-01338-MO |
| Plaintiff, | ) |
| vs. | ) |
| NATIONSTAR SUB1 LLC; et al., | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO [23] DECLARATION OF SCOTT D. CRAWFORD IN SUPPORT OF MOTION TO DISMISS AND [24] MOTION TO DISMISS BY DEFENDANTS ZIEVE BRODNAX & STEELE, LLP AND BENJAMIN PETIPRIN**

Plaintiff responds to [23] DECLARATION OF SCOTT D. CRAWFORD IN SUPPORT OF MOTION TO DISMISS ("Declaration") and [24] MOTION TO DISMISS BY DEFENDANTS ZIEVE BRODNAX & STEELE, LLP AND BENJAMIN PETIPRIN ("Motion").

### The Declaration is Deficient

The Declaration is deficient because it state legal conclusions without stating the facts from which those conclusions may be drawn. For example, in paragraph 4, the declarant (Scott D. Crawford) does not state whether he was in the room when Amy F. Harrington, Esq. allegedly "execute" the Notice of Rescission. In paragraph 5, the declarant refers to "the" Notice, but does

1

PLAINTIFF'S RESPONSE TO [23] DECLARATION AND [24] MOTION

not state, for example, that this is "the Notice [of Rescission of...] which I saw Amy F. Harrington sign."

The Exhibit 1 attached to the Declaration, titled "Rescission of Notice of Default" (note that this title does NOT match the name chosen by the declarant in paragraphs 4 and 5) is also deficient. The signature does not state any capacity. As a mere "attorney at law," acting in her individual capacity, Amy F. Harrington does not have authority to rescind a Notice of Default that was not her own.

The jurat also does not state any capacity. The language is insufficient to constitute an acknowledgment. ORS 194.215(1). The jurat also lacks the customary "ss."

## The Motion is Deficient

The Motion recites a "Statement of Facts" with no citation to any source. The "Statement of Facts" should be disregarded.

To the extent the Motion relies on the [23] Declaration, or on any materials other than the Complaint, it is a motion for summary judgment. See Civil Rule 12(d) ("If, on a motion under Rule 12(b)(6) [to dismiss for failure to state a claim] . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"); see also Iqbal (on a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint). A motion for summary judgment would be premature as there has been no discovery and no opportunity for discovery. "Pre-discovery summary judgment motions are usually premature and hence disfavored." Thompson v. Fathom Creative, Inc., 62 F. Supp. 2d 48, 53 (D.D.C. 2009) (quoting Bourbeau v. Jonathan Woodner Co., 600 F. Supp. 2d 1, 3 (D.D.C. 2009)). A discovery schedule has been set. The Rule 26 Conference

is set for "within thirty (30) days after a defendant files a responsive pleading or a motion under [Rule] 12." See [3] in the case docket.

The Motion states: "... a Notice of Rescission has been executed and was recorded ..." However, as detailed above, the Crawford Declaration and its Exhibit 1 are both deficient.

Regarding RICO, the Motion states:

> In <u>Gosha v. Bank of New York Mellon</u>, a borrower filed a RICO claim against her lender on the basis that her lender's documentation was void, and thus that a foreclosure based on those documents constituted mail and wire fraud. ... The court dismissed the borrower's claim, stating that she could not maintain a RICO action because there is no private right of action for mail fraud.

The relevant portion of <u>Gosha</u> states that the Court is unsure whether ("Even if") a private right of exists, and that the decision was made on other grounds ("Plaintiffs' Third Claim is premised on the invalidity of ... documents ..."):

> At the heart of this matter is Plaintiffs' assertion that AWL, the original lender named on the Deed and Note, is not a legal entity and was not authorized to do business in the State of Oregon at the time of Plaintiffs' loan. Based on that assertion, Plaintiffs contend the Deed and Note are void and unenforceable, that Defendants are precluded from pursuing any foreclosure action against Plaintiffs, that Plaintiffs are entitled to possession of their property free and clear of any liens asserted by Defendants, and that Plaintiffs are entitled to the return of all loan payments made by them.
> ...
> Defendants, as noted, have shown AWL was the registered assumed business name of Countrywide Home Loans, Inc., and the Deed and Note signed by Plaintiffs unambiguously identify the lender as AWL.
>
> ... Based on [business records from the Oregon Secretary of State], the Court concludes the identity of AWL in the Deed and Note is not ambiguous, that AWL was the assumed business name for Countrywide at the time, that AWL was a legal entity at the time of this transaction, and that AWL was authorized to do business in Oregon because it was the assumed business name for Countrywide.
> ...
> **D. Plaintiffs' Third Claim for Violation of RICO.**
>
> Plaintiffs bring their Third Claim against all Defendants for violation of RICO, 18 U.S.C. § 1962(c). Plaintiffs' Third Claim is based on the premise that the Note,

3

PLAINTIFF'S RESPONSE TO [23] DECLARATION AND [24] MOTION

> Deed, Assignment of Deed, Appointment of Successor Trustee, and Notice of Default are void and/or forgeries.
>
> Defendants, in turn, contend Plaintiffs cannot maintain a RICO claim because the loan documents are valid and enforceable, there is not a private right of action for mail fraud, and Plaintiffs fail to allege the elements required to state a RICO claim.
> ...
>
> As noted, Plaintiffs contend Defendants violated RICO when they attempted to foreclose on Plaintiffs' property in reliance on documents that were void and that Defendants' foreclosure activities based on those documents constitute mail and wire fraud.
>
> Courts have concluded mail-and-wire fraud statutes do not confer a private right of action **[which is correct but has nothing to do with RICO. -Swango]**. See, e.g., Idowu v. Astheimer, No. C 10-02672, 2011 WL 89965, at *2 (N.D. Cal. Jan. 11, 2011)("mail and wire fraud statutes do not confer a private right of action.")(citations omitted). See also Wilcox v. First Interstate Bank, 815 F.2d 522, 533, n.1 (9th Cir. 1987)("there is no private right or action for mail fraud under 18 U.S.C. § 1341")(Boochever, J., dissenting)).
>
> Even if a private right of action exists, Plaintiffs' Third Claim is premised on the invalidity of the Deed, Note, and subsequent documents relating to the foreclosure of their property. As noted, the Court has concluded any claim based on the alleged "invalidity" of the Deed and Note is without merit [because AWL is not an unregistered entity, but a DBA of Countrywide].
>
> On this record the Court concludes Plaintiffs' Third Claim fails to state a claim that is plausible on its face, and, accordingly, the Court grants Defendants' Motions to Dismiss as to Plaintiffs' Third Claim.

The Gosha court is correct in stating that "Courts have concluded mail-and-wire fraud statutes do not confer a private right of action" but incorrect when concluding that those holdings have anything to do with RICO.

Defendant (and the Gosha court) cites Idowu v. Astheimer, No C-10-02672, WL 89965, at *2 (N.D. Cal. Jan. 11, 2011) for the proposition that a borrower "could not maintain a RICO action because there is no private right of action for mail fraud."

Idowu in turn cites Wilcox v. First Interstate Bank, 815 F.2d 522, 533 n.1 (9th Cir. 1987), Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d 402, 407-408 (8th Cir. 1999), and

4

PLAINTIFF'S RESPONSE TO [23] DECLARATION AND [24] MOTION

Napper v. Anderson, 500 F.2d 634, 636 (5th Cir. 1974) for the propositions that "there is no private right of action for mail fraud under 18 U.S.C. § 1341", "no private right of action exists under either mail or wire fraud statutes", and "The wire fraud act, 18 U.S.C. § 1343, is closely analogous to the mail fraud statute, 18 U.S.C. § 1341, and likewise evidences no intent of Congress to grant additional federal question jurisdiction in civil cases", respectively.

The relevant portion of Idowu shows that the plaintiff did not sue under RICO but under the mail and wire fraud statutes directly, and the court considered whether to grant leave to amend to include a RICO claim:

> Plaintiff Rufus Idowu filed the instant pro se action against Defendants Wesley, Astheimer, Asset Recovery and YRC Inc. ("YRC"), alleging claims for wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341.
>
> ... courts have consistently found that the mail and wire fraud statutes do not confer a private right of action. See, e.g., Wilcox v. First Interstate Bank, 815 F.2d 522, 533 n.1 (9th Cir. 1987) ("there is no private right of action for mail fraud under 18 U.S.C. § 1341") (Boochever, J., dissenting); Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d 402, 407-408 (8th Cir. 1999) (finding no private right of action exists under either mail or wire fraud statutes); Napper v. Anderson, 500 F.2d 634, 636 (5th Cir. 1974) ("The wire fraud act, 18 U.S.C. § 1343, is closely analogous to the mail fraud statute, 18 U.S.C. § 1341, and likewise evidences no intent of Congress to grant additional federal question jurisdiction in civil cases").
>
> Since Plaintiff cannot state a claim directly under the mail or wire fraud statutes, his first and second claims for relief must be dismissed.
>
> ...
>
> The question remains whether Plaintiff should be granted leave to amend. Although Plaintiff cannot sue directly under the mail and wire fraud statutes, a violation of those provisions could serve as predicate acts in support of a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

The Idowu court actually recognized that the plaintiff COULD state a RICO mail or wire fraud claim, by merely alleging certain things, and that the lack of a direct private right of action under the mail and wire fraud statutes provided no impediment:

5

PLAINTIFF'S RESPONSE TO [23] DECLARATION AND [24] MOTION

Thus, "[t]o avoid dismissal for inadequacy under Rule 9(b), [the] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."

The relevant portion of Wilcox v. First Interstate Bank states:

**Other than in the context of RICO**, federal appellate courts hold that there is no private right of action for mail fraud under 18 U.S.C. § 1341. Ryan v. Ohio Edison Co., 611 F.2d 1170, 1177-79 (6th Cir.1979); Bell v. Health-Mor, Inc., 549 F.2d 342 (5th Cir.1977).

Interestingly, Wilcox also states:

Few cases, however, specifically compare the elements of a civil RICO claim with any common law cause of action. In Travelers Indem. Co. v. Sarkisian, 794 F.2d 754, 761 (2d Cir.), cert. denied, ___ U.S. ___, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986), the court, reviewing a dismissal on res judicata grounds, concluded that "the elements of the state law claims [fraudulent conveyances and unlawful payments of dividends and salary] are not virtually identical to those previously pled under RICO." (footnote omitted). See also Malley-Duff & Assocs v. Crown Life Ins. Co., 792 F.2d 341, 347-48 (3rd Cir.) (civil RICO is "far removed" from any traditional state action for purposes of borrowing state statute of limitations), cert. granted, ___ U.S. ___, 107 S.Ct. 569, 93 L.Ed.2d 573 (1986); Durante Bros., 755 F.2d at 249 ("no state law analog to the present civil RICO claim"); Ralston v. Capper, 569 F.Supp. 1575, 1580 (E.D.Mich.1983) (RICO "fraud" claim is not identical to a state common law fraud claim). Similarly, in Armco, 782 F.2d at 482, the Fifth Circuit held that the elements necessary to support damages under civil RICO are different from state causes of action, including common law fraud. The difference is that "justifiable reliance is not an element that need be proven to establish a mail fraud violation." Id.

The relevant portion of Wisdom v. First Midwest Bank of Poplar Bluff states that a mail fraud claim was brought SEPARATELY from the RICO claim, and that separate mail fraud claim was the one for which no private right of action existed -- and, in fact, stated that "mail fraud can be a predicate act":

Robert and Nancy Wisdom (the Wisdoms) brought this Racketeer Influenced and Corrupt Organizations Act (**RICO**) claim against First Midwest Bank and three of its officers. They **also** asserted federal law claims for violation of the Truth In

6

PLAINTIFF'S RESPONSE TO [23] DECLARATION AND [24] MOTION

Lending Act, **mail fraud, wire fraud**, extortion, and pendant state law claims of common law fraud and deceit.

...

### A. RICO Claim

...

When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme. See Murr Plumbing, Inc. v. Scherer 407*407 Bros. Fin. Servs. Co., 48 F.3d 1066, 1069 & n. 6 (8th Cir.1995) (noting that a RICO claim does not require proof of misrepresentation of fact). Extortion is defined as "obtaining . . . property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

The Wisdoms allege that the defendants committed mail fraud in relation to the settlement agreement reached in May 1991. ...

Though mail fraud can be a predicate act, mailings are insufficient to establish the continuity factor unless they contain misrepresentations themselves. ...

Assuming these collection activities satisfy the initial showing of an underlying scheme to defraud, the predicate acts of mail and wire fraud occurred between July and December 1992. This six-month period is too short to satisfy the closed-ended analysis of the pattern requirement. See Primary Care, 986 F.2d at 1215 (holding that eleven months is insufficient to satisfy the closed-ended continuity requirement and noting that other Circuits consistently hold that schemes less than one year are too short). Assuming, arguendo, that the March 1992 "suggestion" to keep the loan with First Midwest Bank could amount to extortion, the predicate acts would still only cover a ten-month period, which likewise is too short to satisfy the closed-ended continuity requirement. Finally, there are no allegations that can be construed to show on-going criminal activity. We hold that the Wisdoms have failed to meet the pattern element and, thus, their RICO claim must fail. Consequently, we need not address the other RICO elements.

### B. Implied Right of Action Under Criminal Statutes

...

There is no clear indication that Congress intended to create such a right.

...

We hold, therefore, that the district court correctly dismissed the Wisdoms' claims **based on a private right of action under 18 U.S.C. §§ 1341, 1343, and 1951.**


The relevant portion of Napper v. Anderson states that the claim was brought, NOT under RICO, but under the mail and wire fraud statutes directly:

7

PLAINTIFF'S RESPONSE TO [23] DECLARATION AND [24] MOTION

On September 25, 1973, the plaintiffs filed in the present case an amended complaint reasserting the same claim based on diversity jurisdiction with the same allegations of citizenship. As an alternative claim, the plaintiffs sought to recover damages alleged to have resulted from violation by the defendants of the wire fraud act, 18 U.S.C. § 1343.[2] The plaintiffs claim that violation of that criminal statute operates to create a federal cause action for damages against the defendants, and assert jurisdiction under 28 U.S.C. § 1337.[3]

...

In <u>Oppenheim v. Sterling</u>, 1966, 368 F.2d 516, 518-519, the Tenth Circuit held that 18 U.S.C. §§ 1341, 1342, relating to mail fraud, are purely penal and rejected "the view that a violation of these penal statutes as such affords the court federal question jurisdiction in a civil case." The wire fraud act, 18 U.S.C. § 1343, is closely analogous to the mail fraud statute, 18 U.S.C. § 1341, and likewise evidences no intent of Congress to grant additional federal question jurisdiction in civil cases. Reitmeister v. Reitmeister, 2 Cir.1947, 162 F.2d 691, does not persuade us differently.

The Motion states:

> ... Plaintiff fails to identify which tort she bases her civil conspiracy claim on.

However, the Complaint states:

66. The Nationstar Defendants formed a combination with the MetLife Defendants and the Law Firm Defendants.

67. The object to be accomplished was a baseless and unlawful foreclosure of the Property.

68. Defendants had a meeting of the minds on the object or course of action.

69. The one or more unlawful overt acts were the recording and mailing of false and fraudulent and fabricated documents that were unauthorized and falsely claimed that some one of the Defendants has the right to enforce a promissory note signed by Plaintiff.

70. No promissory note related to a reverse mortgage can possibly be a negotiable instrument. For example, it is not for a fixed sum.

71. As the proximate result of the unlawful overt acts, Plaintiff was damaged in an amount to be determined at trial or summary judgment.

These paragraphs state a claim for fraud. The 9 elements of Oregon fraud are: 1) A representation; 2) Its falsity; 3) Its materiality; 4) The speaker's knowledge of the representation's

8

falsity or ignorance of its truth; 5) Intent that the representation be acted on in a manner reasonably contemplated; 6) The hearer's ignorance of the falsity of the representation; 7) The hearer's reliance on its truth; 8) The hearer's right to rely on the representation; and 9) Damage caused by the representation. Musgrave v. Lucas, 193 Or 401, 410, 238 P2d 780 (1951); Webb v Clark, 274 Or 387, 391, 546 P2d 1078 (1976).

The quoted paragraphs allege: 1) Representations by "All Defendants" that the recorded and mailed documents were genuine, true and authorized, and that "some one of the Defendants has the right to enforce a promissory note signed by Plaintiff"; 2) Their falsity, as the recorded and mailed documents were false, fraudulent, fabricated and unauthorized, and that no Defendant had the right to enforce any such note; 3) The representations' materiality, as clearly the right to foreclose follows the right to enforce; 4) Defendants' knowledge of the falsity, as no one accidentally or unknowingly creates, records and mails false, fraudulent, fabricated, unauthorized documents; 5) Intent to act, as that is the whole purpose of recording and mailing real estate-related documents; 6) Ignorance by the Lane County Circuit Court of the falsity, as the Defendants would not plausibly inform that Court of the falsity; 7) The Lane County Circuit Court's reliance; 8) The Lane County Circuit Court's right to rely; 9) Damage resulting.

In the event the Court rules that the allegations of the Complaint are insufficient, the Court ought to grant leave to amend, as is customary.

## Conclusion

The FAC adequately states a claim and the Motion should be denied, or in the alternative and without waiving the foregoing, Plaintiff should be given leave to re-plead.

9

PLAINTIFF'S RESPONSE TO [23] DECLARATION AND [24] MOTION

Dated: November 15, 2017

By: _____
Susan K. Swango, Plaintiff

CERTIFICATE OF SERVICE

The undersigned hereby certifies that upon the date last written below I served a true copy of the foregoing upon the following parties by U.S. first class mail and/or email:

**Scott D. Crawford**
**Zieve Brodnax & Steele, LLP**
**121 SW Salmon St, 11th Fl**
**Portland, OR 97204**
Telephone: (503) 946-6558
Email: scrawford@zbslaw.com
Attorneys for Defendants Zieve Brodnax &
Steele, LLP, and Benjamin Petiprin

**James P. Laurick**
**Kilmer, Voorhees & Laurick, P.C.**
**732 NW 19th Avenue**
**Portland, Oregon 97209**
Telephone: (503) 224-0055
Fax: (503) 222-5290
Email: jlaurick@kilmerlaw.com
Attorneys for Defendants Nationstar Mortgage LLC
dba Champion Mortgage Company (also
erroneously sued as Nationstar Sub1 LLC and
Nationstar Mortgage Holdings Inc.), MetLife Home
Loans LLC (also erroneously sued as MetLife, Inc.,
Synchrony Bank, and Synchrony Financial), and
MetLife Bank, N.A.

Dated: November 15, 2017.

_____
Susan Swango

10

PLAINTIFF'S RESPONSE TO [23] DECLARATION AND [24] MOTION