IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SUSAN K. SWANGO,

        Plaintiff,

v.

NATIONSTAR SUB1, LLC;
NATIONSTAR MORTGAGE
HOLDINGS, INC.; NATIONSTAR
MORTGAGE, LLC, doing business as
Champion Mortgage Company;
METLIFE HOME LOANS, LLC;
METLIFE BANK, NATIONAL
ASSOCIATION; ZIEVE, BRODNAX
AND STEELE, LLP; BENJAMIN D.
PETIPRIN; METLIFE, INC.;
SYNCHRONY BANK; SYNCHRONY
FINANCIAL; and FIDELITY NATIONAL
TITLE INSURANCE COMPANY, doing
Business as Lawyers Title Insurance
Corporation,

        Defendants.

No. 3:17-cv-01338-MO

OPINION AND ORDER

MOSMAN, J.,

This matter comes before the Court on the following Motions: the Motion to Dismiss

Plaintiff's Amended Complaint [18] pursuant to Federal Rule of Civil Procedure 12(b)(6) filed

by Defendants Nationstar Mortgage, MetLife Home Loans, and MetLife Bank N.A. ("MetLife"

or "Nationstar," respectively); the Request for Judicial Notice [19] filed by MetLife and

Nationstar; the Motion to Dismiss [24] pursuant to Federal Rule of Civil Procedure 12(b)(1) and

12(b)(6) filed by Defendants Zieve Brodnax and Steele, LLP, and Benjamin Petiprin (collectively "the Zieve Defendants"); and Plaintiff's Motion for Leave to File Surreply [29].

For the reasons that follow, the Court GRANTS in part and DENIES in part MetLife and Nationstar's Motion to Dismiss Plaintiff's Amended Complaint [18]; GRANTS MetLife and Nationstar's Request for Judicial Notice [19]; GRANTS in part and DENIES in part the Zieve Defendants' Motion to Dismiss [24]; and GRANTS Plaintiff's Motion for Leave to File Surreply [29].

## BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint [8], the Line of Credit Deed of Trust attached as Exhibit 1 to the Declaration of James P. Laurick [20], and the Assignment of Trust Deed attached as Exhibit 2 to the Laurick Declaration,[1] and are taken as true at this stage of the proceedings:

Plaintiff obtained a line of credit from MetLife that was secured by a Deed of Trust on Plaintiff's real property. As part of their advertising for their reverse mortgage products, Plaintiff alleges MetLife represented to prospective borrowers that a borrower could "stay in your home until you die." Am. Compl. ¶ 73. The Deed of Trust was recorded on June 22, 2009, and identified the "maximum principal amount" as $938,250.00. Paragraph 2 of the Deed of Trust requires Plaintiff to:

---

[1] The Court may "consider 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Dunn v. Castro*, 621 F.3d 1196, 1204 n.6 (9th Cir. 2010) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)) (alterations in original). In her First Amended Complaint, Plaintiff refers to and discusses the contents of the Trust Deed (¶¶ 77–78) and the Assignment (¶¶ 38–62). Accordingly, the Court may consider the Trust Deed and Assignment in resolving the Motions before the Court. The Request for Judicial Notice [19] filed by MetLife and Nationstar seeks only for the Court to consider the Trust Deed and Assignment. Accordingly, the Court GRANTS their Request on this basis.

pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

Laurick Decl. [20] Exh. 1, at 2. Paragraph 5 of the Deed of Trust provides:

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

*Id.*, at 3. The Trust Deed provides the Lender may accelerate the debt and require immediate payment in full after approval by an authorized representative of the Secretary of the Department of Housing and Urban Development if "[a]n obligation of the Borrower under this Security Instrument is not performed." *Id.*, at 3–4. In the event that the Lender accelerated the debt, the Trust Deed states "Lender may invoke the power of sale and any other remedies permitted by applicable law." *Id.*, at 6.

On July 11, 2012, MetLife assigned to Champion Mortgage Company "all rights and benefits whatsoever accrued or to accrue under" the Trust Deed. Laurick Decl. [20] Exh. 2. Champion is an entity related to Nationstar. Am. Compl. ¶ 10. As of July 20, 2017, MetLife and Nationstar had lent to Plaintiff $664,125.08 in principal with a total amount due of $742,784.87. Pl.'s Am. Compl. ¶ 83. At an unspecified time, Nationstar accelerated the debt and moved to foreclose on Plaintiff's property on the basis that Plaintiff failed to pay property taxes. Plaintiff alleges in the event that she did not pay property taxes, Nationstar was required to do so under the terms of the loan.

In Claim One Plaintiff, proceeding *pro se*, brings a breach-of-contract claim against MetLife and Nationstar on the basis that they failed to fulfill their contractual obligation to pay the property taxes. In Claim Two Plaintiff brings a claim to quiet title in her property *vis-à-vis* MetLife and Nationstar. In Claim Three Plaintiff brings a claim for civil conspiracy against all Defendants on the basis that they conspired to conduct an unlawful foreclosure of Plaintiff's property. In Claim Four Plaintiff brings a claim for an equitable accounting of the loan. In Claim Five Plaintiff brings two counts against all Defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p. In Count Six Plaintiff brings a claim against all Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*, and under Oregon state law, Oregon Revised Statute §§ 166.715–166.735, on the basis that the Defendants engaged in a pattern of racketeering activity. In Claim Seven Plaintiff brings five counts under the Oregon Unlawful Trade Practices Act ("UTPA"), Oregon Revised Statute §§ 646.607, 646.638, 646.639, against MetLife and Nationstar. In Claim Eight Plaintiff brings two counts under Oregon Revised Statute §§ 124.100, 124.110 against MetLife, Nationstar, and Fidelity for financial abuse of a protected person. Finally, in Claim Nine Plaintiff brings a claim for fraud against MetLife and Fidelity on the basis that MetLife made the loan and Fidelity insured the loan with the intention and basis of foreclosing on Plaintiff's property.

## STANDARDS

When reviewing a motion to dismiss, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel*, 393 F.3d at 1072. A court need not accept legal conclusions as true because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to

dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers only "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). While a plaintiff does not need to make detailed factual allegations at the pleading stage, the allegations must be sufficiently specific to give the defendant "fair notice" of the claim and the grounds on which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing *Twombly*, 550 U.S. at 555).

When a defendant moves to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court will grant a defendant's motion if the Complaint fails to allege facts sufficient to establish subject-matter jurisdiction. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Alternatively, a defendant may seek dismissal under Rule 12(b)(1) by presenting evidence to refute the jurisdictional facts alleged in the complaint. *Id.* Once the defendant has introduced such evidence, the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (citation omitted).

Federal Rule of Civil Procedure 15 provides that a court should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). As such, when a court dismisses a complaint for failure to state a claim, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th

Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). If amendment would be futile, the court need not grant leave to amend. *Id.* "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

When reviewing a motion to dismiss against a *pro se* plaintiff, the court construes the *pro se* pleadings "liberally," affording the plaintiff the "benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotations omitted). This liberal interpretation may not, however, "supply essential elements of the claim that were not initially pled." *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

As noted, MetLife and Nationstar move to dismiss Plaintiff's complaint in its entirety as to them in pursuant to Rule 12(b)(6).

## I. Claim One – Breach of Contract

As noted, in Claim One Plaintiff brings a claim against MetLife and Nationstar[2] for breach of contract on the basis that they failed to pay property taxes and to add those payments to the loan principal. Plaintiff appears to suggest in her First Amended Complaint that such payments should have been made because the $664,125.08 in loan principal remained below the $938,250.00 maximum principal amount.

MetLife and Nationstar contend Plaintiff's allegation that they had a duty to pay property taxes is contradicted by the terms of the Trust Deed and, therefore, should not be credited as true. MetLife and Nationstar argue Plaintiff's breach of contract claim should be dismissed because

---

[2] Although Plaintiff names only MetLife in this claim, it appears Claim One should apply to both entities because the loan was assigned to Champion (a subsidiary of Nationstar).

the Trust Deed provides Plaintiff – and not MetLife or Nationstar – was responsible for paying

the property taxes.

As noted, Plaintiff alleges MetLife and Nationstar were obligated to pay property taxes in

the event that Plaintiff did not do so. In support of that allegation Plaintiff references the

following paragraph from the Trust Deed:

> If Borrower fails to make these payments or the property charges required by Paragraph
> 2, or fails to perform any other covenants and agreements contained in this Security
> Instrument, or there is a legal proceeding that may significantly affect Lender's rights in
> the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or
> regulations), then Lender may do and pay whatever is necessary to protect the value of
> the Property and Lender's rights in the Property, including payment of taxes, hazard
> insurance and other items mentioned in Paragraph 2.

Laurick Decl. [20] Exh. 1, at 3. MetLife and Nationstar, on the other hand, contend that

provision establishes they did not have any duty to pay property taxes, but instead merely had

discretion to do so.

The Trust Deed, however, also provides Plaintiff must

> pay all property charges consisting of taxes, ground rents, flood and hazard insurance
> premiums, and special assessments in a timely manner, and shall provide evidence of
> payment to Lender, *unless Lender pays property charges by withholding funds from
> monthly payments due to the Borrower or by charging such payments to a line of credit
> as provided for in the Loan Agreement.*

*Id.*, at 2 (emphasis added). It is unclear without reference to the Loan Agreement (which is not in

the record on MetLife and Nationstar's Motion to Dismiss) whether there is any provision

therein that requires MetLife or Nationstar to pay property taxes or whether the Trust Deed

merely refers to the procedure set out in the Loan Agreement by which MetLife or Nationstar

could pay the property taxes at their discretion. Because there is not any unequivocal

contradiction of Plaintiff's allegation that the parties' agreement created a duty in MetLife and,

later, Nationstar to pay property taxes if Plaintiff did not do so, the Court must view the

allegation in the light most favorable to Plaintiff and accept it as true at this stage of the
proceedings.

So construed, Plaintiff's claim for breach of contract is straightforward: MetLife and
Nationstar breached their duty to pay property taxes on Plaintiff's behalf and, as a result,
Plaintiff defaulted on her reverse-mortgage loan and incurred damages therefrom. Plaintiff,
therefore, plausibly states a claim for breach of contract on this record.

## II.    Claim Two – Quiet Title

As noted, in Claim Two Plaintiff brings a claim against MetLife and Nationstar to quiet
title in the property.

In her Amended Complaint Plaintiff makes the following allegations regarding MetLife
and/or Nationstar:

> 92.    Defendants claim some interest or estate, adverse to Plaintiff's, in the Property.
>
> 93.    Defendants have clouded Plaintiff's title by recording unauthorized documents
> and document [*sic*] with forged signatures and documents which falsely claim that some
> one of the Defendants has the right to enforce a promissory note signed by Plaintiff.
>
> 94.    Defendants' claims are without merit and Defendants have no estate, title, claim,
> lien, or interest in the Property or any portion thereof.
>
> * * *
>
> 100.   No Defendant has ownership or possession of, nor the right to enforce, nor
> "holder in due course" status relating to, any promissory note encumbering the Property,
> either by itself nor through any agent, officer, employee or principal.

Am. Compl. [8], ¶¶ 92–94, 100. These allegations, however, are the type of broad, conclusory

allegations that this Court need not credit. *Iqbal*, 556 U.S. at 678. In particular, in light of the

various other allegations in Plaintiff's Amended Complaint, it is impossible for the Court (or

Defendants) to guess as to which specific alleged actions Plaintiff alludes to in these conclusory

allegations. Plaintiff, however, also alleges:

97.     The Law Firm Defendants recorded a Notice of sale, when there was no default.

98.     BENJAMIN D. PETIPRIN was not properly authorized as Successor Trustee. The
document purportedly appointing BENJAMIN D. PETIPRIN as Successor Trustee was
purportedly signed by Stephen Craycroft as Assistant Secretary of Defendant
NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY,
which was the purported beneficiary of Deed #200909517. However, Stephen Craycroft
did not hold that position and otherwise lacked authority to sign the said document.

99.     There is no recorded Power of Attorney or other relationship between
NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY and
METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A. that would
support the signing of an Appointment of Successor Trustee.

*Id.* ¶¶ 97–99. As to Claim Two Plaintiff seeks:

101.     Plaintiff requests a declaration that no Defendant is the owner or holder of any
Note encumbering the Property; that no Defendant has any secured interest in Plaintiffs
property; and that Plaintiff has no legal relationship with any of the Defendants; and that
Plaintiff is the owners [sic] of the Property.

102.     Plaintiff requests a declaration that any documents to the contrary are void, and a
quieting of title in Plaintiffs name.

*Id.* ¶¶ 101–102.

"In general, a person may bring an equitable quiet title action to obtain resolution of a

dispute relating to adverse or conflicting claims to real property." *Spears v. Dizick,* 234 P.3d

1037, 1039 (Or. Ct. App. 2010). "In an action to quiet title, 'plaintiffs must prove that they have

a substantial interest in, or claim to, the disputed property and that their title is superior to that of

defendants.'" *Howe v. Greenleaf,* 320 P.3d 641, 646 (Or. Ct. App. 2014) (quoting *Coussens v.

Stevens,* 113 P.3d 952, 955 (Or. Ct. App. 2005)).

MetLife and Nationstar contend Plaintiff's Claim Two should be dismissed with

prejudice because Plaintiff has not alleged she has at least tendered payment of the entire amount

owed and it is clear from the allegations in the Amended Complaint that Plaintiff is unable to do

so. MetLife and Nationstar largely rely on out-of-state authority for the proposition that a

mortgagor cannot quiet title against a mortgagee without paying the full amount of the debt owed. *See Watson v. MTC Financial, Inc.*, No. 2:09–CV–01012 JAM–KJM, 2009 WL 2151782, at \*4 (E.D. Cal. Jul. 17, 2009) (quoting *Shimpones v. Stickney*, 28 P.2d 673, 678 (Cal. 1934)). The parties do not cite any Oregon caselaw on this point and the Court was unable to locate any binding authority under Oregon law.

The Court is nonetheless persuaded that Oregon courts, like the courts of many states, would find that a mortgagor who seeks to quiet title against her mortgagee must tender payment of the full amount of the debt owed. *See, e.g.*, *Trusty v. Ray*, 249 P.2d 814, 817 (Idaho 1952) ("'A mortgagor cannot without paying his debt quiet title as against the mortgagee.'") (quoting *Gerken v. Davidson Grocery Co.*, 296 P. 192, 193 (Idaho 1931)); *Farrell v. West*, 114 P.2d 910, 910 (Ariz. 1941) (same); *Shimpones*, 28 P.2d at 678 (same); *Bank of Am., N.A. v. Reyes-Toledo*, No. CAAP-15-0000005, 2017 WL 3122498, at \*4 (Haw. Ct. App. Jul. 21, 2017) (same), *cert. granted*, 2017 WL 5661035 (Nov. 24, 2017). As noted, under Oregon law a quiet-title claim is an equitable claim in which the plaintiff must demonstrate her title in the subject property is greater than that of the defendant. *Howe*, 320 P.3d at 646; *Spears*, 234 P.3d at 1039. A mortgagor, however, cannot demonstrate that she has greater title over the subject property than the mortgagee when the subject property secures an outstanding indebtedness. Moreover, equity would not be served by the court granting a quiet-title claim that would nullify a security interest without also ensuring that the underlying debt had been satisfied.

For these reasons, the Court concludes Plaintiff must allege she has tendered payment of the full amount of the outstanding debt in order to maintain her quiet-title claim. Plaintiff did not do so in her Amended Complaint and, therefore, Plaintiff's quiet title claim must be dismissed on this basis.

The Court also notes Plaintiff's Claim Two is insufficiently pleaded in other respects. Although Plaintiff lists MetLife and Nationstar in Claim Two as the named Defendants, the nonconclusory allegations as to those Defendants with respect to Claim Two are insufficient to state a quiet-title claim. Moreover, it is unclear how the alleged defects in the assignment of the reverse mortgage from MetLife to Nationstar would give rise to a quiet-title claim.

The Court, therefore, dismisses Plaintiff's Claim Two. The Court grants Plaintiff leave to amend her Amended Complaint as to Claim Two if Plaintiff can in good faith allege that she has tendered repayment of the full amount of the outstanding debt or is ready and able to do so, and can in good faith allege nonconclusory facts to address the other deficiencies outlined above.

## III. Claim Three – Civil Conspiracy

In Claim Three Plaintiff brings a claim of civil conspiracy against all Defendants. Plaintiff alleges Nationstar, MetLife, and the Zieve Defendants agreed to work together to bring about a "baseless and unlawful foreclosure of the Property." Am. Compl. [8] ¶¶ 105–07. As overt acts Plaintiff alleges the Defendants engaged in "the recording and mailing of false and fraudulent and fabricated documents that were unauthorized and falsely claimed that some one of the Defendants has the right to enforce a promissory note signed by Plaintiff." *Id.* ¶ 108. Plaintiff also alleges "Defendants knew or should have known that Plaintiff did not qualify for the Loan," because of her age and the zoning restrictions applicable to the property. *Id.* ¶¶ 120–24. Like many of the allegations the Court noted with respect to Claim Two, however, these allegations are too vague and conclusory to be credited by this Court. *Iqbal*, 556 U.S. at 678.

Plaintiff, however, also alleges "Defendants made the false representation of material fact that Defendants intended to advance funds up to the stated $938,250.00 limit, when in fact Defendants intended to advance funds only up to the HUD/FHA $625,000.00 limit." *Id.* ¶ 116.

11 – OPINION AND ORDER

Plaintiff notes although the Trust Deed indicated the maximum principal amount was $938,250.00, the Reverse Mortgage Closing Instructions indicated the maximum principal amount was $625,000.00. *Id.* ¶¶ 110, 113. Plaintiff, however, alleges she was unaware of the lower maximum principal amount of the loan and reasonably relied on the greater amount when she arranged her personal financial affairs. *Id.* ¶ 115, 117–18.

"A civil conspiracy consists of (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a result of the overt act or acts." *Morasch v. Hood*, 222 P.3d 1125, 1131–32 (Or. Ct. App. 2009). "However, civil conspiracy is not, itself, a separate tort for which damages may be recovered; rather, it is a 'way[ ] in which a person may become jointly liable for another's tortious conduct.'" *Id.* at 1132 (quoting *Granewich v. Harding*, 985 P.2d 788, 792 (Or. 1999)) (alteration in original).

Defendants contend Plaintiff's allegations fail to state a claim for civil conspiracy because Plaintiff fails to plead or state a claim for the underlying tort that Defendants are alleged to have conspired to commit, and Plaintiff failed to sufficiently allege facts supporting each actor's role(s) in the conspiracy and the agreement between the parties. The Zieve Defendants contend Claim Three should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) on mootness grounds on the basis that the notice of default and the foreclosure have been cancelled since Plaintiff filed this litigation.

The Court disagrees with the Zieve Defendants that Plaintiff's Claim Three must be dismissed as moot.[3] The Zieve Defendants contend Plaintiff's claims related to the asserted

---

[3] The Court has considered the Surreply [29-1] filed by Plaintiff in opposition to the Zieve Defendants' Motion to Dismiss [24]. The Court, therefore, GRANTS Plaintiff's Motion for

foreclosure of the property are moot because that foreclosure was cancelled. The Zieve

Defendants attach to their Reply Memorandum [28-1] a Rescission of Notice of Default dated

September 11, 2017, that was filed in the Yamhill County Record on October 13, 2017. The

Zieve Defendants contend the filing of that Notice moots Plaintiff's claims against them,

including Claim Three.

Construing the Amended Complaint liberally, as the Court must, Plaintiff seeks damages

on Claim Three on the basis of injuries that occurred as a result of the initiation of the

foreclosure proceedings. Am. Compl [8] ¶ 125. The Court notes Plaintiff elsewhere alleges she

suffered damage to her business, including lost buyers for a horse, as a result of the filing of the

Notice of Default. *Id.* ¶¶ 169–72. Unlike a claim to prevent a foreclosure from proceeding, such

a claim for damages stemming from the filing of a notice of default is not mooted by the

rescission of the Notice of Default. Accordingly, the Court finds Plaintiff's Claim Three is not

moot.

The Court, however, agrees with Defendants that Plaintiff has failed to state a claim for

civil conspiracy. Defendants are correct that Plaintiff has not specified any tort underlying Claim

Three. Although Defendants understandably speculate that Plaintiff attempted to plead a claim

for conspiracy to commit a wrongful foreclosure in Claim Three, this Court has repeatedly found

Oregon law does not recognize the standalone tort of wrongful foreclosure. *Parsley v. Bank of*

*America, N.A.*, 3:16-cv-00175-SB, 2017 WL 2927162, at \*3 (D. Or. Apr. 24, 2017) (collecting

cases). Plaintiff's failure to identify any underlying tort necessitates dismissal.

---

Leave to File Surreply [29] and directs the Clerk to docket the Surreply as a standalone pleading.
The Court, nonetheless, OVERRULES the authentication objections contained therein.

Accordingly, on this record the Court dismisses Plaintiff's Claim Three without prejudice. The Court grants Plaintiff leave to amend if she can allege in good faith specific facts that support a claim of civil conspiracy to commit a specific, identified underlying tort.

## IV.    Claim Four – Equitable Accounting

In Claim Four Plaintiff seeks an equitable accounting on the basis that MetLife and Nationstar allegedly assert Plaintiff owes approximately $44,000.00 in property taxes that MetLife and Nationstar paid. Plaintiff alleges, however, that MetLife and Nationstar did not pay property taxes and, therefore, that Plaintiff does not owe MetLife and Nationstar reimbursement for payments of property taxes.

An equitable accounting is "a bookkeeping process whereby debits and credits are balanced or a balance of mutual accounts is struck." *Carey v. Hays*, 409 P.2d 899, 902 (Or. 1966) (en banc). "'The rule is universal that courts of equity have jurisdiction to settle accounts whenever a fiduciary relation exists between the parties and the duty to render an account to one of the parties rests upon the other.'" *Id.* (quoting *Templeton v. Bockler*, 144 P. 405, 409 (Or. 1914)). "An interested party may compel an accounting 1) when a trust has been established; 2) when a fiduciary relationship exists between the parties and one party has the duty to render an account to the other; 3) when an accounting is incidental to other equitable relief; and 4) when the account is too complex for a jury to unravel." *Brown's Indus., Inc. v. Snow Mountain Pine Co.*, No. 87-cv-1119-FR, 1989 WL 142411, at *22 (D. Or. Oct. 26, 1989).

The conditions for an equitable accounting are not present in this case. The relationship between a borrower and a lender is not ordinarily fiduciary in nature, and there do not appear to be any unusual circumstances alleged by Plaintiff that would create a fiduciary relationship between Plaintiff and Defendants. *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1037 (D.

Or. 2012). Moreover, the accounting that Plaintiff seeks is not complex and the issues relating to which party is responsible for payment of property taxes can be resolved through Plaintiff's legal claims. Accordingly, Plaintiff's legal remedies are adequate and there is not any reason for this Court to sit in equity to conduct an accounting.

Because it appears amendment of a claim for an equitable accounting would be futile in light of the inconsistency between Plaintiff's already-pleaded foundational facts and a claim for an equitable accounting, and because Plaintiff's legal remedies are sufficient, the Court dismisses Plaintiff's Claim Four with prejudice.

## V.    **Claim Five – FDCPA**

As noted, in Claim Five Plaintiff brings two counts of FDCPA violations putatively against all Defendants.

In Count One Plaintiff alleges Nationstar violated the FDCPA when it sent two debt-collection letters that misrepresented (1) the amounts owed and (2) who was entitled to enforce the promissory note. Am. Compl. ¶ 146. Plaintiff alleges she disputed the debt in a responsive letter, but Nationstar did not respond and continued debt-collection activities. Am. Compl. ¶¶ 147–49. Although Plaintiff names all Defendants in the entirety of Claim Five, the Court construes Count One as a claim only against Nationstar because the factual allegations therein relate only to Nationstar.

In Count Two Plaintiff alleges she "timely disputed all notices and claims of debt and demanded verification and validation." *Id.* ¶ 152. Plaintiff alleges Defendants failed to obtain verification and validation of the debt and thereafter continued to proceed with debt-collection activities including foreclosure proceedings in violation of 15 U.S.C. § 1692g(b). *Id.* ¶¶ 153–54.

MetLife and Nationstar contend Claim Five must be dismissed as to them because Plaintiff has not pleaded facts sufficient to establish they are "debt collectors" within the meaning of the FDCPA. The Zieve Defendants contend Claim Five must be dismissed as to them because pursuit of a foreclosure is not "debt collection" within the meaning of the FDCPA. In addition, all Defendants contend Plaintiff otherwise fails to plead sufficient factual material as to Claim Five to survive a motion to dismiss.

## A.    Arguments of MetLife and Nationstar

MetLife and Nationstar rely on *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), to argue they are not "debt collectors" within the meaning of the FDCPA. The Court in *Henson* interpreted the definition of "debt collector" as set out in 15 U.S.C. § 1692(a)(6): The term "debt collector" means any person who "regularly collects or attempts to collect . . . debts owed or due . . . another." *Henson*, 137 S. Ct. at 1721 (omissions in original). The question before the Court in *Henson* was whether an entity that acquired a debt that was already in default and then attempted to collect the debt on its own behalf qualified as a "debt collector" under the FDCPA. After engaging in an extensive textual interpretation of the FDCPA, the Court held the defendant, Santander, was not a "debt collector" within the meaning of the statute because it sought to collect a debt on its own behalf, not on behalf of another. *Id.* at 1721–22.

Like Santander, MetLife and Nationstar contend Nationstar's efforts to foreclose on the property were efforts to collect the debt on Nationstar's own behalf, not on behalf of "another," and, therefore, Nationstar was not acting as a "debt collector" within the meaning of the FDCPA. The Court agrees. Although Plaintiff alleges the assignment of the reverse mortgage to Nationstar was invalid, those alleged defects in the assignment do not give rise to any plausible

inference that Nationstar was, in fact, acting as a third-party debt collector. To the contrary, the only inference that can be drawn from the nonconclusory factual allegations in Plaintiff's Amended Complaint is that Nationstar was acting to collect a debt on its own behalf. Accordingly, on this record the Court agrees with MetLife and Nationstar that they are not "debt collector[s]" under the definition the Court addressed in *Henson*.

The FDCPA, however, provides an alternative definition of "debt collector" that includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6); *see also Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208–09 (9th Cir. 2013). Plaintiff's Amended Complaint, however, does not contain any nonconclusory factual allegations from which the Court could plausibly infer that either Nationstar or MetLife are "debt collector[s]" under this definition.

The Court, therefore, dismisses Claim Five as to MetLife and Nationstar without prejudice on this basis. The Court grants Plaintiff leave to amend Claim Five if Plaintiff can, in good faith, allege nonconclusory facts that at least give rise to an inference that MetLife and/or Nationstar meet either definition of "debt collector" in 15 U.S.C. § 1692a(6).

## B.    Arguments of the Zieve Defendants

The Zieve Defendants move to dismiss Claim Five on the basis that foreclosure of a deed of trust, as alleged by Plaintiff, is not "debt collection" within the meaning of the FDCPA. MetLife and Nationstar also join this argument.

The Zieve Defendants rely on *Vien-Phuong Thi Ho v. ReconTrust Co., N.A.*, 858 F.3d 568, 571–72 (9th Cir. 2016), in which the Ninth Circuit held "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to

collect 'debt' as that term is defined by the FDCPA" in the context of a non-judicial foreclosure in which the lender could not obtain a deficiency judgment. *Id.* at 572. The Court agrees *Vien-Phuong* controls this case. Like *Vien-Phuong*, the Trust Deed in this case precluded the lender from obtaining a deficiency judgment after the sale of the property. Laurick Decl. Exh. 1., at 4. As the Ninth Circuit held in *Vien-Phuong*, therefore, the actions taken in anticipation of the now-cancelled non-judicial foreclosure cannot form the basis of an FDCPA violation. There are not any nonconclusory allegations in Plaintiff's Amended Complaint from which the Court could conclude any other activities form the basis of Plaintiff's Claim Five.

On this record, therefore, the Court dismisses Claim Five as to MetLife, Nationstar, and the Zieve Defendants without prejudice. The Court grants Plaintiff leave to amend Claim Five if Plaintiff can allege in good faith nonconclusory facts that are sufficient to establish at this stage of the proceedings that MetLife and Nationstar are "debt collectors" within the meaning of § 1692a(6), and that the FDCPA claims arise from actions that were not "taken to facilitate a non-judicial foreclosure." *See Vien-Phuong*, 858 F.3d at 572.

## VI.   Claim Six – RICO

In Claim Six, Plaintiff brings a claim under RICO, 18 U.S.C. § 1961, *et seq.*, against all Defendants. It appears Plaintiff also intends to bring a claim under Oregon's RICO equivalent, but Plaintiff erroneously invokes an Ohio statute in her Amended Complaint. The Oregon RICO equivalent ("ORICO") is codified at Oregon Revised Statute §§ 166.715–166.735.

In Claim Six Plaintiff alleges all Defendants maintained a pattern of racketeering activity consisting of mail fraud whereby the Defendants mailed allegedly false foreclosure letters to homeowners and rental-property owners even though Defendants did not own or hold the notes encumbering the property. Am. Compl. ¶¶ 157–58. Plaintiff alleges Defendants then proceeded

18 – OPINION AND ORDER

to record a "Trustee's Deed" that reflected a "credit bid" and initiated non-judicial foreclosure proceedings. *Id.* ¶ 160. By doing so, Plaintiff alleges Defendants deceived homeowners into thinking the foreclosures are legitimate and thereby acquired the properties through foreclosure. *Id.* ¶ 161–64. In addition, Plaintiff alleges Defendants, without authority to do so, sent letters to renters instructing them to send rent payments to Defendants pursuant to "the terms of a real or imagined" mortgage or trust deed. *Id.* ¶ 169. As a result of these actions in her instance, Plaintiff alleges she suffered damage to her business and property, including lost buyers for a horse due to the filing of public records falsely claiming Plaintiff was in default. *Id.* ¶ 170–71.

"Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). "Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1989)).

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Rule 9(b) 'requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Odom*, 486 F.3d at 553 (quoting *Schreiber Distrib. Co.*, 806 F.2d at 1400). "[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co.*, 806 F.2d at 1401. "While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally." *Odom*, 486 F.3d at 554.

As an initial matter, MetLife and Nationstar contend Plaintiff's ORICO claim must be dismissed because a private, civil action is not permitted by ORICO in these circumstances. Absent a criminal conviction based on racketeering activity, Oregon law only permits a private right of action under RICO "[i]f the violation is based on racketeering activity as defined in ORS 166.715 (6)(a)(B) to (J), (K) as it relates to burglary and criminal trespass, (L) to (P), (S), (T), (U), (V), (X) to (Z), (AA) to (EE), (LL), (MM) or (PP) to (WW)." Or. Rev. Stat. § 166.725(7)(a)(B). MetLife and Nationstar are correct that Plaintiff failed to plead a qualifying predicate violation under ORICO because mail fraud is not among the listed predicates and the allegations in Plaintiff's Amended Complaint do not clearly fit within any other listed predicate violation. Accordingly, to the extent that Plaintiff's Claim Six is based on ORICO, the Court dismisses that claim without prejudice and with leave to amend if Plaintiff can, in good faith, plead a qualifying predicate violation under ORICO.

All Defendants contend Plaintiff's allegations as to her federal RICO claim fail to meet the heightened standard of Rule 9(b). The Court agrees.[4] In her Amended Complaint Plaintiff appears to bring a claim under 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

[4] The Zieve Defendants also argue mail fraud cannot constitute a predicate violation of 18 U.S.C. § 1962 because the federal mail fraud statute does not give rise to a private right of action. The Court disagrees. Although the Zieve Defendants are correct that the federal mail fraud statute (18 U.S.C. § 1341) does not create a private right of action, RICO creates a private right of action when, under certain circumstances, the predicate activity is mail fraud in violation of § 1341. *See* 18 U.S.C. § 1961(1)(B) (defining "racketeering activity" to include an act of mail fraud that is indictable under § 1341); § 1962 (proscribing racketeering activity in several contexts); § 1964 (creating a private right of action for certain violations of § 1962).

"To state a claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom*, 486 F.3d at 547. In addition, "[t]o have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).

Plaintiff's allegations in Claim Six are far too general to satisfy the heightened pleading requirements of Rule 9(b). Plaintiff has failed to make any allegations concerning the contents of the allegedly fraudulent letters, specify which portions of the letters contained material misrepresentations, or explain why the record filings were fraudulent. Moreover, Plaintiff has failed to allege with particularity the role of each Defendant in the alleged scheme.

Accordingly, the Court concludes Plaintiff's Claim Six brought pursuant to RICO must be dismissed without prejudice and with leave to amend if Plaintiff can in good faith allege additional, nonconclusory factual material that would cure the deficiencies in the Amended Complaint.

## VII. Claim Seven – UTPA

In Claim Seven Plaintiff brings five counts against Nationstar and MetLife under the Oregon Unlawful Trade Practices Act. In Count One Plaintiff alleges: "NATIONSTAR MORTGAGE HOLDINGS INC. is trying to collect on the Note and foreclose on the Property, in violation of ORS 646.639(k)." Am. Compl. [8] ¶ 175. In Count Two Plaintiff alleges: "The beneficiary did not request a resolution conference, in violation of ORS 86.726(1)(a)." *Id.* ¶ 176. In Count Three Plaintiff alleges: "Plaintiff was never told where, or to whom, or by what

deadline, to pay any resolution conference fee, in violation of ORS 86.726(l)(a)." *Id.* ¶ 177. In Count Four Plaintiff alleges MetLife falsely advertised that "if you buy and use their reverse mortgage product, you can stay in your home until you die" in violation of Oregon Revised Statute § 646.608(1)(u). *Id.* ¶ 178. Finally, in Count Five Plaintiff alleges MetLife falsely represented the amount of the loan and that Plaintiff could "stay in [her] home until [she] die[s]" in violation of Oregon Revised Statute § 646.608(1).[5] *Id.* ¶¶ 182–87.

As an initial matter, the Court concludes Counts One, Two, and Three must be dismissed because the allegations therein – which are quoted above in their entirety – are far too conclusory and bereft of specific factual allegations to support a claim for relief. In addition, in order to state a claim under Oregon Revised Statute § 646.608(1)(u) as Plaintiff attempts to do in Count Four "there must be an administrative rule prohibiting that specific conduct." *Horton v. Nelson*, 288 P.3d 967, 972 (Or. Ct. App. 2012). Plaintiff failed to identify any administrative rule that MetLife violated in Count Four and, therefore, the Court must also dismiss that Count. The Court grants Plaintiff leave to amend Counts One through Four of Claim Seven to address the deficiencies identified herein.

MetLife and Nationstar contend Plaintiff's UTPA claim as raised in Count Five is barred by the statute of limitations and Plaintiff fails to state a claim under the UTPA. "The UTPA is a remedial statutory scheme, 'enacted as a comprehensive statute for the protection of consumers from unlawful trade practices.'" *State ex rel. Rosenblum v. Johnson & Johnson*, 362 P.3d 1197, 1202 (Or. Ct. App. 2015) (quoting *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 22 (Or. 2015)). A

---

[5] Plaintiff in Count Five also includes allegations concerning the validity of the assignment of the loan to Nationstar. *Id.* ¶ 181. It is unclear how this allegation relates to the other allegations in Count Five, all of which refer to representations MetLife made concerning the amount of the loan and the available remedies for default. The Court, therefore, construes Count Five only as a claim regarding those alleged misrepresentations.

cause of action under the UTPA must be brought within one year of when Plaintiff knew or should have known of the alleged violation. *Pearson*, 361 P.3d at 33.

As noted, Plaintiff's Count Five stems from alleged misrepresentations concerning the maximum principal amount of the loan and the availability of foreclosure as a remedy for default. In particular, Plaintiff alleges MetLife represented the maximum principal amount to be $938,250.00 when, in fact it was $625,000.00, and claimed foreclosure was not an available remedy for default.

Plaintiff, however, was on notice of these alleged misrepresentations no later than when Plaintiff and MetLife closed on the reverse mortgage loan in 2009. As Plaintiff herself alleges in Claim Three, the $625,000 maximum principal amount was set out in the Reverse Mortgage Closing Instructions. Am. Compl. ¶ 113. At very least, Plaintiff should have known of the alleged inconsistency between MetLife's alleged representations and the maximum principal amount at the time that the loan and mortgage were finalized pursuant to those Instructions. Moreover, the foreclosure remedy is specifically provided for in the Trust Deed that was recorded in June 2009. Laurick Decl. [20] Exh. 1, at 6. Plaintiff, therefore, at least should have known of the alleged inconsistency between MetLife's alleged representations and the terms of her reverse mortgage no later than June 2009. Plaintiff's UTPA claims based on MetLife's alleged misrepresentations regarding the maximum principal amount and the foreclosure remedy, therefore, are barred by the UTPA's one-year statute of limitations. The Court dismisses Plaintiff's Count Five of Claim Seven with prejudice.

## VIII. Claim Eight – Financial Abuse of an Elderly Person

In Claim Eight Plaintiff alleges MetLife violated Oregon Revised Statute § 124.110 when it induced Plaintiff to enter into the reverse-mortgage loan, misled Plaintiff as to the maximum

principal amount of the loan, and issued a loan beyond that which Plaintiff was eligible for as a result of her age and zoning restrictions on the property.[6] MetLife moves to dismiss Claim Eight on the bases that Plaintiff fails to state a claim and Plaintiff's Claim Eight is barred by the seven-year statute of limitations contained in Oregon Revised Statute § 124.130.

Plaintiff asserts MetLife's conduct violated § 124.110(1)(a), which provides an action may be brought under § 124.100 when "a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person." "[T]here are four elements to a claim for financial abuse of an elderly or incapacitated person: There must be '(1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be wrongful.'" *Gibson v. Bankofier*, 365 P.3d 568, 577–78 (Or. Ct. App. 2015) (quoting *Church v. Woods*, 77 P.3d 1150, 1153 (Or. Ct. App. 2003)). A claim under § 124.110 must be brought within seven years after the discovery of the conduct that gives rise to the claim. Or. Rev. Stat. § 124.130. The discovery rule in Oregon provides that a "claim accrues when the plaintiff has discovered facts or, in the exercise of reasonable diligence, should have discovered facts that would alert a reasonable person to the existence" of the claim. *Murphy v. Allstate Ins. Co.*, 284 P.3d 524, 528 (Or. Ct. App. 2012) (interpreting the discovery rule in the context of Oregon Revised Statute § 12.110(1), which uses language materially identical to § 124.130) (emphasis omitted).

---

[6] Plaintiff alleges two counts of violations of § 124.110 in Claim Eight, which Plaintiff brought against both MetLife and Defendant Fidelity National Title Insurance Company. Count Two, however, only addresses Fidelity's alleged conduct. Fidelity, however, has not yet responded to Plaintiff's Amended Complaint. Accordingly, the Court addresses only Count One as against MetLife in this Opinion and Order.

The Court initially notes it is difficult to discern from Plaintiff's pleadings which action she identifies as the taking or appropriation of money or property, especially in light of the fact that the alleged foreclosure has not yet taken place (and has apparently been cancelled). Plaintiff must cure this deficiency in her next amended complaint.

As noted, the Court agrees with MetLife that Plaintiff's claims that rely on alleged misrepresentation of the maximum principal amount of the loan as the actionable allegation accrued no later than June 2009 when the loan was finalized and the Trust Deed was recorded. Plaintiff initiated this action on July 23, 2017. To the extent that Plaintiff's Claim Eight is based on MetLife's alleged misrepresentations concerning the maximum principal amount of the loan, Plaintiff did not bring that claim within the applicable seven-year statute of limitations. Accordingly, the Court dismisses with prejudice Claim Eight to the extent it is based on alleged misrepresentations concerning the maximum principal amount of the loan.

As noted, Plaintiff also lists other potential bases for liability in Count One of Claim Eight, including that Plaintiff was "only eligible for no more than $417,000.00 because of her age" (Am. Compl. ¶ 194), the unreasonableness of the terms of the loan (Am. Compl. ¶ 197), and Plaintiff's ineligibility for the loan on the basis of zoning restrictions on the property (Am. Compl. ¶ 199). The allegations related to these claims, however, are far too conclusory to support a claim for relief. Accordingly, the Court dismisses without prejudice Claim Eight to the extent it is based on these allegations. The Court grants Plaintiff leave to amend as to these allegations so long as Plaintiff can plead in good faith sufficient nonconclusory facts to support such claims.

## IX.    Claim Nine – Fraud

In Claim Nine Plaintiff brings a common-law fraud claim against MetLife and Fidelity on largely the same basis as Claim Eight. MetLife moves to dismiss Claim Nine as to it on the bases that it is inadequately pleaded and barred by the two-year statute of limitations contained in Oregon Revised Statute § 12.110(1).

As noted, a discovery rule applies to the two-year statute of limitations in § 12.110(1) whereby a "claim accrues when the plaintiff has discovered facts or, in the exercise of reasonable diligence, should have discovered facts that would alert a reasonable person to the existence" of the claim. *Murphy*, 284 P.3d at 528. For the same reasons as Claim Eight, Plaintiff's Claim Nine is barred by the statute of limitations to the extent that it is based on the alleged misrepresentations concerning the maximum principal amount of the loan. Accordingly, the Court dismisses with prejudice Claim Nine to the extent it is based on such misrepresentations.

The other bases for Claim Nine set out in the Amended Complaint are identical to those that Plaintiff alleged with respect to Claim Eight. Accordingly, as with Claim Eight the Court finds those bases for relief in Claim Nine are inadequately pleaded and, therefore, must be dismissed without prejudice and with leave to amend to the extent that Plaintiff can plead in good faith nonconclusory facts that would support such claims.

## CONCLUSION

For these reasons, the Court GRANTS in part and DENIES in part MetLife and Nationstar's Motion to Dismiss Plaintiff's Amended Complaint [18]; GRANTS MetLife and Nationstar's Request for Judicial Notice [19]; GRANTS in part and DENIES in part the Zieve Defendants' Motion to Dismiss [24]; and GRANTS Plaintiff's Motion for Leave to File Surreply [29].

In summary, the Court declines to dismiss Plaintiff's Claim One; dismisses Claim Two without prejudice and with leave to amend; dismisses Claim Three without prejudice and with leave to amend; dismisses Claim Four with prejudice; dismisses Claim Five as to MetLife, Nationstar, and the Zieve Defendants without prejudice and with leave to amend; dismisses Claim Six without prejudice and with leave to amend; dismisses Claim Seven with prejudice; dismisses Claim Eight as to MetLife with prejudice to the extent that claim is based on alleged misrepresentations concerning the maximum principal amount of the loan, but without prejudice as to the other alleged bases for relief; and dismisses Claim Nine as to MetLife with prejudice to the extent that it is based on alleged misrepresentations concerning the maximum principal amount of the loan, but without prejudice as to the other alleged bases for relief.

The Court advises Plaintiff that failure to address the pleading deficiencies outlined in this Opinion and Order in her next amended complaint may result in the Court finding that dismissal of such claims with prejudice is necessary because further leave to amend would be futile.

## CASE-MANAGEMENT ORDER

While the above Motions were pending, Plaintiff filed a Motion to Modify Initial Scheduling Order [33] and a Corrected Motion to Modify Initial Scheduling Order [34], and MetLife and Nationstar filed a Motion to Extend Discovery, Motion for Summary Judgment, and Pretrial Deadlines [35]. In light of the broad scope of matters for Plaintiff to address in her next amended complaint as a result of this Opinion and Order, the Court finds proceeding with discovery at this point is not viable. Accordingly, the Court STRIKES all existing case-management and discovery deadlines, STAYS discovery, and DENIES as moot Plaintiff's

Motions to Modify Initial Scheduling Order [33, 34] and the Motion to Extend [35] filed by

MetLife and Nationstar.

The Court directs Plaintiff to file any second amended complaint no later than February

26, 2018. Defendants' responsive pleading(s) will be due no later than March 25, 2018.

IT IS SO ORDERED.

DATED this 2⧸ day of February, 2018.

MICHAEL W. MOSMAN
Chief United States District Judge