IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SUSAN K. SWANGO,                                    Case No. 3:17-cv-01338-MO

                           Plaintiff,

                                                    **OPINION AND ORDER**

        v.

**NATIONSTAR SUB1, LLC;
NATIONSTAR MORTGAGE
HOLDINGS, INC.; NATIONSTAR
MORTGAGE, LLC, doing business as
Champion Mortgage Company;
METLIFE HOME LOANS, LLC;
METLIFE BANK, NATIONAL
ASSOCIATION; ZIEVE, BRODNAX
AND STEELE, LLP; BENJAMIN D.
PETIPRIN; METLIFE, INC.;
SYNCHRONY BANK; SYNCHRONY
FINANCIAL; and FIDELITY NATIONAL
TITLE INSURANCE COMPANY, doing
business as Lawyers Title Insurance
Corporation,**

                           Defendants.

**MOSMAN, J.,**

        This matter comes before the Court on the following Motions: the Motion to Dismiss [54]

Plaintiff's Second Amended Complaint [47] pursuant to Federal Rule of Civil Procedure

12(b)(6) filed by Defendants Zieve, Brodnax, and Steele, LLP, and Benjamin Petiprin

(collectively, "the Zieve Defendants"); the Motion to Dismiss [55] filed by Defendants

Nationstar Mortgage LLC d/b/a Champion Mortgage Company, MetLife Home Loans LLC, and MetLife Bank, N.A. ("Nationstar" or "MetLife," respectively); and the Request for Judicial Notice [56] filed by MetLife and Nationstar.

For the reasons that follow, the Court GRANTS the Zieve Defendants' Motion to Dismiss [54]; GRANTS in part and DENIES in part MetLife and Nationstar's Motion to Dismiss [55]; and GRANTS MetLife and Nationstar's Request for Judicial Notice [56]. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims and DISMISSES this action, without prejudice for Plaintiff to pursue her claims in state court.

## BACKGROUND

The following facts are taken from Plaintiff's Second Amended Complaint [47], the Line of Credit Deed of Trust attached as Exhibit 1 [57-1] to the Declaration of James P. Laurick [56], the Assignment of Trust Deed [57-2] attached as Exhibit 2 thereto,[1] and the Fixed Rate Note attached as Exhibit 3 thereto [57-3], and are taken as true at this stage of the proceedings:

Plaintiff obtained a line of credit from MetLife secured by a Deed of Trust on Plaintiff's real property ("the Property"). 2d Am. Compl. [47] ¶ 38; *see also* Laurick Decl. [57] Exh. 1 [57-1]. Plaintiff alleges that MetLife, as part of its advertising for reverse mortgage products,

---

[1] The Court may "consider 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Dunn v. Castro*, 621 F.3d 1196, 1204 n.6 (9th Cir. 2010) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)) (alterations in original). In her Second Amended Complaint [47], Plaintiff refers to and discusses the contents of the Trust Deed (¶¶ 98-100), the Assignment (¶¶ 40-77), and the Note (¶ 42). Accordingly, the Court may consider these documents in resolving the Motions before the Court. The Request for Judicial Notice [56] filed by MetLife and Nationstar seeks only for the Court to consider the Trust Deed, Assignment, and Note. Plaintiff opposes the Request, but her arguments are largely those the Court already rejected in granting Nationstar's earlier Request for Judicial Notice [19] as to the Motions to Dismiss the First Amended Complaint. The documents' authenticity is not disputed. Additionally, Plaintiff's opposition to Nationstar's Motion to Dismiss addresses solely the Request, and does not engage the merits of Nationstar's Motion to Dismiss. Accordingly, the Court GRANTS the Request for Judicial Notice.

represented to prospective borrowers that a borrower could "stay in your home until you die." 2d

Am. Compl. [47] ¶ 96. The Deed of Trust was recorded on June 22, 2009, and identified the

"maximum principal amount" as $938,250.00. *Id.* ¶¶ 38, 151. Paragraph 2 of the Deed of Trust

requires Plaintiff to:

> pay all property charges consisting of taxes, ground rents, flood and hazard insurance
> premiums, and special assessments in a timely manner, and shall provide evidence of
> payment to Lender, unless Lender pays property charges by withholding funds from
> monthly payments due to the Borrower or by charging such payments to a line of credit
> as provided for in the Loan Agreement.

Laurick Decl. [56] Exh. 1 [57-1], at 2. Paragraph 5 of the Deed of Trust provides:

> If Borrower fails to make these payments or the property charges required by Paragraph
> 2, or fails to perform any other covenants and agreements contained in this Security
> Instrument, or there is a legal proceeding that may significantly affect Lender's rights in
> the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or
> regulations), then Lender may do and pay whatever is necessary to protect the value of
> the Property and Lender's rights in the Property, including payment of taxes, hazard
> insurance and other items mentioned in Paragraph 2.

*Id.*, at 3. The Deed of Trust provides that the Lender may accelerate the debt and require

immediate payment in full if "[a]n obligation of the Borrower under this Security Instrument is

not performed." *Id.*, at 3-4. It also states that, in the event of acceleration, the "Lender may

invoke the power of sale and any other remedies permitted by applicable law." *Id.*, at 6.

On July 11, 2012, MetLife assigned to Champion Mortgage Company "all rights and

benefits whatsoever accrued or to accrue under" the Deed of Trust. Laurick Decl. [56] Exh. 2

[57-2], at 1. Champion is an entity related to Nationstar. 2d Am. Compl. [47] ¶¶ 10-11. As of

July 20, 2017, MetLife and Nationstar had lent to Plaintiff $664,125.08 in principal with a total

amount due of $742,784.87. *Id.* ¶ 106. At an unspecified time, Nationstar accelerated the debt

and moved to foreclose on the Property on the basis that Plaintiff had failed to pay property

taxes. *Id.* ¶ 110. Plaintiff alleges that, in the event that she did not pay property taxes, Nationstar was required to pay them under the terms of the loan. *Id.* ¶¶ 102-05.

Plaintiff, proceeding *pro se*, brings nine causes of action. In Claim One, she brings a breach of contract claim against MetLife and Nationstar on the basis that they failed to fulfill their contractual obligation to pay property taxes, and did not advance Plaintiff the full amount of funds called for under the line of credit contract. *Id.* ¶¶ 94-112. In Claim Two, Plaintiff brings a claim to quiet title in the Property as to MetLife and Nationstar. *Id.* ¶¶ 113-41. In Claim Three, Plaintiff brings a claim for civil conspiracy against all Defendants on the basis that they conspired to conduct an unlawful foreclosure of the Property. *Id.* ¶¶ 142-69. In Claim Four, Plaintiff brings two counts against Nationstar under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. 2d Am. Compl. [47] ¶¶ 170-88. In Claim Five, Plaintiff brings a claim against Nationstar under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* 2d Am. Compl. [47] ¶¶ 189-214. In Claim Six, Plaintiff brings five counts under the Oregon Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. §§ 646.607, 646.638, and 646.639, against MetLife and Nationstar. 2d Am. Compl. [47] ¶¶ 215-32. In Claim Seven, Plaintiff brings two counts under Or. Rev. Stat. §§ 124.100 and 124.110 against MetLife, Nationstar, and Fidelity for financial abuse of a protected person. 2d Am. Compl. [47] ¶¶ 233-52. In Claim Eight, Plaintiff brings a claim for fraud against MetLife and Fidelity on the basis that MetLife made the loan to Plaintiff, and Fidelity insured the loan, with the intention of foreclosing on the Property. *Id.* ¶¶ 253-69. Lastly, Plaintiff brings a declaratory judgment claim against all Defendants regarding whether Plaintiff is required to allege that she has tendered the amount due on the loan in order to bring a quiet title claim. *Id.* ¶¶ 270-84.

Plaintiff's earlier First Amended Complaint [8] contained largely the same allegations and claims as the Second Amended Complaint. Defendants filed Motions to Dismiss [18, 24] the First Amended Complaint, which the Court addressed in its Opinion and Order [37] of February 5, 2018. The Court denied in part, granted in part with leave to amend, and granted in part without leave to amend the Motions to Dismiss. The Court stated: "The Court advises Plaintiff that failure to address the pleading deficiencies outlined in this Opinion and Order in her next amended complaint may result in the Court finding that dismissal of such claims with prejudice is necessary because further leave to amend would be futile." Op. & Order [37], at 27.

Plaintiff filed her Second Amended Complaint [47] on March 23, 2018.

## STANDARDS

When reviewing a motion to dismiss, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). A court need not accept legal conclusions as true because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers only "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). While a plaintiff does not need to make detailed factual allegations at the pleading stage, the allegations must be sufficiently specific to give the defendant "fair notice" of the claim and the grounds on

which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 15 provides that a "court should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). As such, when a court dismisses a complaint for failure to state a claim, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). If amendment would be futile, the court need not grant leave to amend. *Id.* "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

When reviewing a motion to dismiss against a *pro se* plaintiff, the court construes the *pro se* pleadings "liberally," affording the plaintiff the "benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotations omitted). This liberal interpretation may not, however, "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

Nationstar and MetLife move to dismiss each of Plaintiff's causes of action. The Zieve Defendants move to dismiss the civil conspiracy and declaratory judgment claims.

# I.    Claim One – Breach of Contract

In Claim One, Plaintiff brings a breach of contract claim against MetLife and Nationstar[2] on the basis that they failed to pay property taxes and to add those payments to the loan principal. Plaintiff appears to suggest that such payments should have been made because the $664,125.08 in loan principal remained below the $938,250.00 maximum principal amount.

MetLife and Nationstar previously moved to dismiss this allegation as to the First Amended Complaint, arguing that Plaintiff's allegation that they had a duty to pay property taxes was contradicted by the terms of the Deed of Trust, and, therefore, should not be credited as true. MetLife and Nationstar argued that Plaintiff's breach of contract claim should be dismissed because the Deed of Trust provides that Plaintiff – and not MetLife or Nationstar – was responsible for paying the property taxes. In its earlier Opinion and Order, the Court rejected these arguments, denied the Motions to Dismiss as to that claim, and held:

> It is unclear without reference to the Loan Agreement (which is not in the record on MetLife and Nationstar's Motion to Dismiss) whether there is any provision therein that requires MetLife or Nationstar to pay property taxes or whether the Trust Deed merely refers to the procedure set out in the Loan Agreement by which MetLife or Nationstar could pay the property taxes at their discretion. Because there is not any unequivocal contradiction of Plaintiffs allegation that the parties' agreement created a duty in MetLife and, later, Nationstar to pay property taxes if Plaintiff did not do so, the Court must view the allegation in the light most favorable to Plaintiff and accept it as true at this stage of the proceedings.

> So construed, Plaintiff's claim for breach of contract is straightforward: MetLife and Nationstar breached their duty to pay property taxes on Plaintiffs behalf and, as a result, Plaintiff defaulted on her reverse-mortgage loan and incurred damages therefrom. Plaintiff, therefore, plausibly states a claim for breach of contract on this record.

Op. & Order [37], at 7-8.

---

[2] Although Plaintiff names only MetLife in this claim, it appears that Claim One should apply to both entities because the loan was assigned to Champion, a subsidiary of Nationstar.

Plaintiff's allegations under Claim One, for breach of contract, in her Second Amended Complaint are nearly identical to those in the First Amended Complaint. In their Motion to Dismiss, MetLife and Nationstar bring largely the same arguments they did in their earlier Motion, arguing that they had the discretion, but not the obligation, to pay property taxes on the Property. The Court has already rejected these arguments. Defendants have provided no grounds for the Court to depart from its earlier holding, or to grant a Motion to Dismiss as to a claim on which the Court already denied such a Motion.

In Claim One, Plaintiff also alleges that her contract with MetLife required it to lend or advance funds up to a maximum of $938,250.00, but that MetLife would only advance funds of $664,125.08, thus "fail[ing] to lend or advance funds to Plaintiff as called for by the Contract." 2d Am. Compl. [47] ¶¶ 98-99, 106-08, 112. Defendants argue that Plaintiff misunderstands the nature of the loan and of reverse mortgages, and that in such instruments, the loan principal of $938,250.00 is not the amount of cash advances available to the borrower. Instead, they argue, that principal amount represents 150% of the maximum claim amount on the loan. This allows for a deed of trust "to provide sufficient security for the loan over its projected lifetime." Nationstar Mot. Dismiss [55], at 7.[3] MetLife cites HUD guidelines that allegedly instruct lenders

---

[3] Nationstar further contends:

> Therefore, the $938,250 face value listed in the Deed of Trust is not indicative of the maximum amount that can be withdrawn pursuant to Plaintiff's reverse mortgage Loan as alleged in the breach of contract claim. The face value listed in the Deed of Trust number represents 150% of the maximum claim amount on the Loan and nothing more. Plaintiff was never entitled to $938,250 in advances, and she cannot now argue that Lender was obligated to pay her property expenses until the loan balance reaches $938,250. Because the Loan balance necessarily continues to increase each year due to interest, it makes no sense to suggest that the difference between the original loan balance and the maximum principal balance stated in the mortgage should be available for cash advances. That balance (as it is stated in the Deed of Trust) is designed to protect both Plaintiff

to set the principal at 150% of the maximum claim amount. *Id.*, at 7-8 (citing HUD HECM Handbook, Directive 4235.1, Section 6-6). However, by its terms, the HUD guidelines apply "[w]here state law requires the mortgage reflect a maximum mortgage amount," *id.*, and MetLife has not established that any such state law applies here. MetLife does not support its interpretation of the loan contract and calculation of finances by citation to the contract or otherwise; at best, at this stage of the proceedings, it is merely MetLife's own assertion that the principal and claim maximum should be interpreted in this way. As with the breach of contract claim with regard to payment of the property taxes, and as the Court explained in its prior Opinion and Order, without contradictory language from the loan documents, the Court must view these allegations in the light most favorable to Plaintiff and accept them as true. MetLife's arguments about the principal amount and cash advances are unavailing at this stage.

The Court denies the Motion to Dismiss Claim One, for breach of contract.

**II.      Claim Two – Quiet Title**

In Claim Two, Plaintiff brings a quiet title claim against MetLife and Nationstar.

Plaintiff makes assorted allegations against Defendants in her quiet title claim. She claims that MetLife is not a mortgagee because the Deed of Trust is "tainted by fraud" and is an "unlawful contract," that Nationstar has clouded Plaintiff's title by recording an unauthorized Assignment with a forged signature that falsely claims a right to enforce a promissory note, and that no Defendant has a right to enforce any promissory note encumbering the Property. 2d. Am. Compl. [47] ¶ 115-16, 128, 137. Plaintiff alleges that all valid loans on the Property have been

---

and lender through the life of the Loan and not to be exhausted ahead of schedule through advances of property expenses or other cash advances.
Nationstar Mot. Dismiss [55], at 8.

discharged and there are no valid liens or mortgages on the Property. *Id.* ¶¶ 121-25. She alleges that the loan documents falsely identify Benjamin Petiprin as a Successor Trustee. *Id.* ¶ 134.

The Court previously dismissed Plaintiff's quiet title claim without prejudice. The Court held that certain of Plaintiff's allegations "are the type of broad, conclusory allegations that this Court need not credit," and that in light of the various other allegations in the Amended Complaint, "it is impossible for the Court (or Defendants) to guess as to which specific alleged actions Plaintiff alludes to in these conclusory allegations." Op. & Order [37], at 8. The Court also observed that "it is unclear how the alleged defects in the assignment of the reverse mortgage from MetLife to Nationstar would give rise to a quiet-title claim." *Id.*, at 11. The Court then surveyed state law and concluded that "Oregon courts, like the courts of many states, would find that a mortgagor who seeks to quiet title against her mortgagee must tender payment of the full amount of the debt owed." *Id.*, at 10.[4] The Court thus gave Plaintiff leave to amend if she could "in good faith allege that she has tendered repayment of the full amount of the outstanding debt or is ready and able to do so." *Id.*, at 11. The Court also required plaintiff to "in good faith allege nonconclusory facts to address the other deficiencies" identified. *Id.*

"In general, a person may bring an equitable quiet title action to obtain resolution of a dispute relating to adverse or conflicting claims to real property." *Spears v. Dizick*, 234 P.3d 1037, 1039 (Or. Ct. App. 2010). "In an action to quiet title, 'plaintiffs must prove that they have a substantial interest in, or claim to, the disputed property and that their title is superior to that of defendants.'" *Howe v. Greenleaf*, 320 P.3d 641, 646 (Or. Ct. App. 2014) (quoting *Coussens v. Stevens*, 113 P.3d 952, 955 (Or. Ct. App. 2005)).

---

[4] *See, e.g.*, *Trusty v. Ray*, 249 P.2d 814, 817 (Idaho 1952) ("A mortgagor cannot without paying his debt quiet title as against the mortgagee." (quotation omitted)); *Farrell v. West*, 114 P.2d 910, 910 (Ariz. 1941); *Shimpones v. Stickney*, 28 P.2d 673, 678 (Cal. 1934); *Bank of Am., N.A. v. Reyes-Toledo*, No. CAAP-15-0000005, 2017 WL 3122498, at *4 (Haw. Ct. App. Jul. 21, 2017).

In her Second Amended Complaint, Plaintiff adequate pleads tender: "Plaintiff is ready and able to tender any and all valid outstanding indebtedness secured by the Property to any person to whom such debt is lawfully owed." 2d Am. Compl. [47] ¶ 118. Although Nationstar argues that Plaintiff must not in fact be able to tender the loan, given her financial difficulties, at the pleading stage the Court takes Plaintiff's allegations regarding tender as true.

Plaintiff also adds specific factual allegations regarding Defendants' alleged actions and the nature of her quiet title claim. She claims that MetLife is not a mortgagee, because the Deed of Trust was "tainted by fraud" due to MetLife's representations regarding the terms of the contract, specifically, the maximum loan amount and the duty to pay property taxes. *Id.* ¶ 115. She alleges that any loans on the Property have been discharged, and that there are no valid liens or mortgages on the Property. *Id.* ¶¶ 121-23. She alleges that, in "recorded documents and mailed statements referred to elsewhere in this Complaint" – presumably including Notices of Default, Election to Sell letters, and Notices of Trustee's Sale – Defendants cloud Plaintiff's title and thus claim an interest in the Property adverse to Plaintiff's. *Id.* ¶ 128. She states that Defendants have no interest in the Property, and thus, impliedly, that her interest therein is superior to Defendants'. *Id.* ¶ 129. Although these allegations are not models of clarity, they do set out specific factual allegations, and given the leeway afforded *pro se* plaintiffs, and the stage of the proceedings, they suffice to address the Court's instructions in repleading and to state a claim for quiet title.

The Court denies the Motion to Dismiss Claim Two, to quiet title.

### III. Claim Three – Civil Conspiracy

In Claim Three, Plaintiff brings a claim for civil conspiracy against all Defendants. Plaintiff alleges that Defendants agreed to work together to bring about a "baseless and unlawful

foreclosure of the Property," unjustly enrich themselves, damage Plaintiff's horse business, and commit financial abuse of a vulnerable person. 2d Am. Compl. [47] ¶¶ 144-47. As overt acts, Plaintiff alleges the Defendants engaged in "the recording and mailing of unauthorized and forged documents, and falsely claiming that some one of the Defendants has the right to enforce a promissory note signed by Plaintiff." *Id.* ¶ 149.

"A civil conspiracy consists of (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a result of the overt act or acts." *Morasch v. Hood*, 222 P.3d 1125, 1131-32 (Or. Ct. App. 2009). "However, civil conspiracy is not, itself, a separate tort for which damages may be recovered; rather, it is a 'way[ ] in which a person may become jointly liable for another's tortious conduct.'" *Id.* at 1132 (quoting *Granewich v. Harding*, 985 P.2d 788, 792 (Or. 1999)) (alteration in original).

The Court previously dismissed Plaintiff's civil conspiracy claim in the First Amended Complaint without prejudice and with leave to amend. The Court first observed that, "[l]ike many of the allegations the Court noted with respect to [the quiet title claim], these allegations are too vague and conclusory to be credited by this Court." Op. & Order [37], at 11. The Court then stated that Plaintiff had failed to state a claim for civil conspiracy, because Plaintiff had "not specified any tort underlying" the conspiracy claim, and thus gave leave to amend only if plaintiff "can allege in good faith specific facts that support a claim of civil conspiracy to commit a specific, identified underlying tort." *Id.*, at 13-14.

Plaintiff's additional allegations do not satisfy the Court's instructions, and Plaintiff still fails to state a claim for civil conspiracy. First, Plaintiff's new allegations concerning the "object[s] to be accomplished" by the alleged conspiracy, 2d Am. Compl. [47] ¶¶ 144-47, and

regarding what "Defendants knew or should have known," *id.* ¶¶ 163-65, do not add specific factual allegations to make Plaintiff's claim less vague or conclusory. Second, Plaintiff has not pleaded a proper underlying tort. Plaintiff appears to offer four potential torts: wrongful foreclosure, unjust enrichment, damaging her horse business, and financial abuse. *Id.* ¶¶ 144-47. None suffices here to underlie a claim for conspiracy. As the Court previously stated, Oregon law does not recognize the standalone tort of wrongful foreclosure. *Parsley v. Bank of Am., N.A.*, 3:16-cv-00175-SB, 2017 WL 2927162, at *3 (D. Or. Apr. 24, 2017) (collecting cases). Unjust enrichment is a quasicontractual claim, not a tort. *Cron v. Zimmer*, 296 P.3d 567, 577 (Or. Ct. App. 2013); *see also Comcast of Or. II, Inc. v. City of Eugene*, 209 P.3d 800, 809 (Or. 2009) (discussing Oregon Tort Claims Act).[5] Damage to a horse business is not a tort (Plaintiff has not, for example, alleged that this damage was wrongful or tortious, such as by constituting intentional interference with contractual relations). Financial abuse has not been sufficiently alleged, as discussed below. Further, Plaintiff fails to plead the role of any Defendant in the alleged conspiracy. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007).

Plaintiff has failed to properly plead a claim for civil conspiracy, or to remedy the deficiencies the Court previously identified as to her civil conspiracy claim. The Court previously cautioned that subsequent dismissal would be with prejudice. The Court thus dismisses Claim Three, for civil conspiracy, with prejudice.

## IV.    Claim Four - FDCPA

In Claim Four, Plaintiff brings two counts of FDCPA violations against Nationstar. In Count One, Plaintiff alleges that Nationstar violated the FDCPA when it sent two debt-collection

---

[5] The Zieve Defendants also argue, correctly, that Plaintiff has failed to sufficiently plead unjust enrichment. Unjust enrichment has three elements: (1) a benefit conferred; (2) an awareness that the benefit has been received; and that (3) under the circumstances, it would be unjust for that party to retain a benefit. *Jones v. Mishler*, 983 P.2d 1086, 1101 (Or. Ct. App. 1999).

letters that misrepresented (1) the amounts owed and (2) who was entitled to enforce the promissory note. 2d Am. Compl. [47] ¶ 178. In Count Two, Plaintiff alleges that she "timely disputed all notices and claims of debt and demanded verification and validation." *Id.* ¶ 185. Plaintiff alleges that Nationstar failed to obtain verification and validation of the debt and thereafter continued to proceed with debt-collection activities, including foreclosure proceedings, in violation of 15 U.S.C. § 1692g(b). 2d Am. Compl. [47] ¶¶ 186-88.

The Court previously dismissed Plaintiff's FDCPA claim, without prejudice, if Plaintiff could in good faith allege nonconclusory facts that would allow the Court to plausibly infer that Nationstar or MetLife was a "debt collector" under the FDCPA. They could be "debt collectors" either because those Defendants were attempting to collect a debt not on their own behalf, *see Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017), or because they met an alternative statutory definition of "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," 15 U.S.C. § 1692a(6); and that MetLife and Nationstar engaged in "debt collection" activities under the FDCPA that were not "taken to facilitate a non-judicial foreclosure," *see Vien-Phuong Thi Ho v. ReconTrust Co.*, 858 F.3d 568, 572 (9th Cir. 2016). Op. & Order [37], at 17-18.

Although Plaintiff has added new allegations to her FDCPA claim, she has not adequately pleaded an FDCPA claim or remedied the stated deficiencies. As to whether Nationstar is a "debt collector," Plaintiff only conclusorily alleges that "the Nationstar Defendants attempted to collect, directly and indirectly, debts owed or due to another," 2d Am. Compl. [47] ¶ 176, but this broad allegation does not contain specific facts for the Court to credit it on a motion to dismiss. The same applies to the conclusory allegations that the "principal

purpose" of Nationstar's business is "the collection of debts." *Id.* ¶ 174. Plaintiff also alleges, without explanation, that the fact that Nationstar used the name "Champion Mortgage" in attempting to collect debts "would indicate that a third person is collecting or attempting to collect such debts," but why this would be so is not at all clear. *Id.* ¶ 177. Neither do to the debt collection letters' alleged statements that "Champion is a debt collector. This is an attempt to collect a debt . . ." mean that Nationstar's activities satisfy the statutory definition of a debt collector. *Id.* ¶ 179. In addition, Plaintiff has added no allegations to indicate that Defendants' alleged "debt collection" activities were other than ones taken to facilitate a non-judicial foreclosure, which do not constitute "debt collection" activity under the FDCPA.

Plaintiff has failed to sufficiently plead an FDCPA claim or to satisfy the Court's instructions. The Court dismisses Claim Four with prejudice.

## V.    Claim Five – RICO

Plaintiff brings Claim Five against Nationstar under RICO. 18 U.S.C. § 1961 *et seq.*[6] Plaintiff alleges that Nationstar maintained a pattern of racketeering activity consisting of mail fraud whereby Nationstar mailed allegedly false foreclosure letters to homeowners and rental-property owners even though Nationstar did not own or hold the notes encumbering the properties. 2d Am. Compl. [47] ¶¶ 191-211. Plaintiff alleges that Nationstar then proceeded to record a "Trustee's Deed" that reflected a "credit bid" and initiated non-judicial foreclosure proceedings. *Id.* ¶ 201. By doing so, Nationstar deceived homeowners into thinking the foreclosures were legitimate and thereby acquired the properties through foreclosure. *Id.* ¶¶ 202-05. In addition, Plaintiff alleges that Nationstar, without authority to do so, sent letters to renters

---

[6] Plaintiff's First Amended Complaint also brought an Oregon state law racketeering claim, Or. Rev. Stat. §§ 166.715-166.735, which the Court dismissed with leave to amend. Plaintiff has not included this state law claim in her Second Amended Complaint.

instructing them to send rent payments to Nationstar pursuant to "the terms of a real or imagined" mortgage or trust deed. *Id.* ¶ 211. Plaintiff alleges that, as a result of these actions, she suffered damage to her business and property, including by losing buyers for horses due to the filing of public records falsely claiming Plaintiff was in default. *Id.* ¶ 212-13.

The Court previously dismissed Plaintiff's RICO claim without prejudice. The Court required Plaintiff to plead "additional, nonconclusory factual material," because:

> Plaintiff's allegations . . . are far too general to satisfy the heightened pleading requirements of Rule 9(b). Plaintiff has failed to make any allegations concerning the contents of the allegedly fraudulent letters, specify which portions of the letters contained material misrepresentations, or explain why the record filings were fraudulent. Moreover, Plaintiff has failed to allege with particularity the role of each Defendant in the alleged scheme.

Op. & Order [37], at 21.

"Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). "Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1989)). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Rule 9(b) 'requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Odom*, 486 F.3d at 553 (quoting *Schreiber Distrib. Co.*, 806 F.2d at 1400). "[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co.*, 806 F.2d at 1401. "While the factual circumstances of the fraud itself must be

alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally." *Odom*, 486 F.3d at 554.

Plaintiff appears to bring a claim under 18 U.S.C. § 1962(c), which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"To state a claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom*, 486 F.3d at 547 (internal quotation omitted). In addition, "[t]o have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).

Although Plaintiff provides some additional factual allegations in her Second Amended Complaint, the pleadings are still insufficient to properly plead a RICO claim.

Plaintiff has added new factual allegations regarding why the mailings from Champion, and the recorded foreclosure documents, were false and fraudulent: "none of the Nationstar Defendants is a person entitled to enforce any Note encumbering their properties, nor an agent of such person"; the documents state that Nationstar Mortgage LLC d/b/a Champion is a beneficiary of the loans, when it is not a beneficiary, and identify Petiprin as a trustee when he is not a trustee; the letters misstate the amount delinquent on the loans and to whom they are owed; and the documents purport to identify an entity called "Servicelink" which does not in fact exist. 2d Am. Compl. [47] ¶¶ 192-200. Although MetLife and Nationstar argue that these claims are conclusory, they are in fact specific factual allegations as to why the letters and recorded

documents are false, and they are not mere legal conclusions. These sufficiently specify, at the pleading stage, the letters' contents and the misrepresentations, and explain why the filings are fraudulent; they thus satisfy certain of the Court's instructions in its Opinion and Order.

Plaintiff also identifies the individual Defendants' roles in the alleged scheme, stating that Nationstar Sub1 LLC and Nationstar Mortgage Holdings Inc. directed Nationstar Mortgage LLC d/b/a Champion to mail the letters and record the foreclosure documents. *Id.* ¶ 192.

Plaintiff nonetheless fails to satisfy the requirements of pleading a RICO claim under Rule 9(b). She does not identify with specificity the time and place of the false representations, only vaguely alleging that the mailings and recordings occurred "[i]n a pattern consisting of at least two occurrences within the last ten years." *Id.* ¶ 192. This is insufficient to plead with particularity under Rule 9(b). *See Schreiber Distrib.*, 806 F.2d at 1400.

Nationstar also argues, correctly, that Plaintiff has not sufficiently alleged proximate causation or damages. Plaintiff broadly refers to multiple allegedly fraudulent documents: various letters and "false foreclosure documents (Notice of Default and Election to Sell, Notice of Trustee Sale, etc.)," and fraudulent Trustee's Deeds. 2d Am. Compl. [47] ¶¶ 193, 201. These were sent to, or recorded as to, unidentified "homeowners." *Id.* ¶¶ 203-04. These broad and varied claims lack specificity or particularity under Rule 9(b). Plaintiff pleads that "[t]he letters received by Plaintiff are part of the scheme" without specifying which letters from the various listed she received, or when she received them and what specific misrepresentations they contained. *Id.* ¶ 205. Plaintiff refers to a scheme regarding rental properties without alleging whether Plaintiff was targeted as part of this rental property scheme or whether she received the letters pertaining to them. Plaintiff has thus failed to sufficiently allege causation between these acts and the Property, and failed to allege damages. Plaintiff pleads that "[u]pon seeing the

public records false claiming that Plaintiff was in default, potential horse buyers decided not to buy Plaintiff's horses because of perceived financial problems," *id.* ¶ 213, but it is unclear which of the various public records Plaintiff refers to, and thus which false statements were made about plaintiff specifically, and so this too is insufficient to plead causation.

Thus, Plaintiff has not complied with all the instructions in the Opinion and Order on the earlier Motions to Dismiss, and has still failed to plead all the elements of a RICO claim or to satisfy Rule 9(b). The Court thus dismisses Plaintiff's RICO claim with prejudice.

## VI. Claim Six – UTPA

In Claim Six, Plaintiff brings five counts against Nationstar and MetLife under the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.607, 646.638, and 646.639.

In Count One, Plaintiff alleges: "Defendant NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY is trying to collect on the Note by writing debt collection letters, and also is trying nto [sic] foreclosure on the Property by mailing and recording Notice of Default and Election to Sell and Notice of Trustee Sale, in violation or ORS 646.693(k)." 2d Am. Compl. [47] ¶ 217. In Count Two, Plaintiff alleges: "ORS 86.726(1)(a) requires the beneficiary to request a resolution conference. NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY never requested a resolution conference." *Id.* ¶ 218. In Count Three, Plaintiff alleges: "The Nationstar defendants never told Plaintiff where, or to whom, or by what deadline, to pay any resolution conference fee, in violation of ORS 86.726(l)(a)." *Id.* ¶ 219.

As to Counts One through Three, the Court previously stated that these "must be dismissed because the allegations therein – which are quoted above in their entirety – are far too conclusory and bereft of specific factual allegations to support a claim for relief." Op. & Order

[37], at 22. In the Second Amended Complaint, Plaintiff has made only very minor, cosmetic changes to these pleadings, and rephrased some language, but has not added "specific factual allegations" or made her allegations any less conclusory. Because Plaintiff has failed to satisfy the Court's explicit instructions when giving leave to amend, and because the Court cautioned Plaintiff that subsequent dismissal would not be with leave, the Court dismisses Counts One, Two, and Three of Claim Six with prejudice.

In Count Four, Plaintiff alleges that MetLife falsely advertised that "if you buy and use their reverse mortgage product, you can stay in your home until you die," and that that advertising is false, because "[a] foreclosure, in such circumstances, is a violation of ORS 646.608(1)(u) and OAR 441-870-0010 and OAR 441-870-0030 and OAR 441-870-0070 and 441-870-0080." *Id.* ¶ 220. The Court previously dismissed Count Four without prejudice and with leave to amend, stating that "[i]n addition" to this Count being conclusory and lacking specific factual allegations, Plaintiff failed to identify specific administrative rules that MetLife violated, as required to state a claim under Or. Rev. Stat. § 646.608(1)(u). Op. & Order [37], at 22. Although Plaintiff has cited four rules in her Second Amended Complaint, her pleadings remain too conclusory and devoid of factual allegations. While Plaintiff has cited these rules, the vague allegation that "[a] foreclosure, in such circumstances," violates those rules is entirely conclusory and does not sufficiently allege that Defendants violated any rule or how they did so. As with Counts One through Three, the Court dismisses Count Four with prejudice.

In Count Five, Plaintiff alleges that MetLife falsely represented the quantity and quality of the loan and misrepresented that Plaintiff could "stay in [her] home until [she] die[s]," in

violation of Or. Rev. Stat. § 646.608(1).[7] *Id.* ¶¶ 224, 228-31. The Court dismissed Count Five

with prejudice, as barred by the UTPA's one-year statute of limitations. "Plaintiff . . . was on

notice of these alleged misrepresentations no later than when Plaintiff and MetLife closed on the

reverse mortgage loan in 2009," and "at least should have known of the alleged inconsistency

between MetLife's alleged representations and the terms of her reverse mortgage no later than

June 2009." Op. & Order [37], at 23. Despite the dismissal with prejudice, Plaintiff has

attempted to replead Count Five, even though the Court did not allow leave to amend. Further,

Plaintiff's only additional allegations are that she "did not discover" what the credit limit was

"until 2017," "was unaware of the Reverse Mortgage Closing Instructions until 2017," and

"never saw any such page" about the "remedy clause." 2d. Am. Compl. [47] ¶¶ 225-27. In

addition to the Court not having given leave to add such allegations in amending, these vague

and conclusory attempts to escape the UTPA statute of limitations are not sufficient to invoke the

discovery rule. *Mitchell v. Greenough*, 100 F.2d 184, 186 (9th Cir. 1938). Plaintiff does not

provide any factual allegations to make plausible the claim that, despite the transactions in 2009

the Court identified, she somehow "did not discover" or "was unaware" of this information until

2017. *Id.*; 2d. Am. Comp. [47] ¶¶ 225-27. Count Five remains dismissed with prejudice.

**VII.**   **Claim Seven – Financial Abuse**

        In Claim Seven, Plaintiff alleges that MetLife violated Or. Rev. Stat. §§ 124.110,

124.100(4), and 124.110(1)(a) when it induced Plaintiff to enter into the reverse-mortgage loan,

misled Plaintiff as to the maximum principal amount of the loan, and issued a loan beyond that

---

[7] In Count Five, Plaintiff also includes allegations concerning the validity of the assignment of
the loan to Nationstar. 2d Am. Compl. [47] ¶ 223. It is unclear how these allegations relate to the
other allegations in Count Five, all of which refer to representations MetLife made concerning
the amount of the loan and the available remedies for default. The Court, as stated in its previous
Opinion and Order, construes Count Five only as a claim regarding those alleged
misrepresentations. Plaintiff has not amended her pleadings to cure these deficiencies.

which Plaintiff was eligible due to her age and to zoning restrictions.[8] 2d Am. Compl. [47]

¶¶ 235-46. MetLife moves to dismiss Claim Seven on the bases that Plaintiff fails to state a claim

and that Claim Seven is barred by the seven-year statute of limitations, Or. Rev. Stat. § 124.130.

Plaintiff asserts that MetLife's conduct violated § 124.110(1)(a), which provides that an

action may be brought under § 124.100 when "a person wrongfully takes or appropriates money

or property of a vulnerable person, without regard to whether the person taking or appropriating

the money or property has a fiduciary relationship with the vulnerable person." "[T]here are four

elements to a claim for financial abuse . . . '(1) a taking or appropriation (2) of money or

property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be

wrongful.'" *Gibson v. Bankofier*, 365 P.3d 568, 577-78 (Or. Ct. App. 2015) (quoting *Church v.

Woods*, 77 P.3d 1150, 1153 (Or. Ct. App. 2003)). A claim under § 124.110 must be brought

within seven years after the discovery of the conduct that gives rise to the claim. Or. Rev. Stat.

§ 124.130. The discovery rule in Oregon provides that a "claim accrues when the plaintiff has

discovered facts *or*, in the exercise of reasonable diligence, should have discovered facts that

would alert a reasonable person to the existence" of the claim. *Murphy v. Allstate Ins. Co.*, 284

P.3d 524, 528 (Or. Ct. App. 2012) (interpreting the discovery rule in the context of Or. Rev. Stat.

§ 12.110(1), which uses language materially identical to § 124.130).

In its Opinion and Order on the Motions to Dismiss Plaintiff's First Amended Complaint,

the Court stated:

> it is difficult to discern from Plaintiff's pleadings which action she identifies as
> the taking or appropriation of money or property, especially in light of the fact

---

[8] Plaintiff alleges two counts of violations of § 124.110 in Claim Seven, which Plaintiff brought against both MetLife and Defendant Fidelity National Title Insurance Company. Count Two, however, only addresses Fidelity's alleged conduct. Fidelity has not yet responded to Plaintiff's Second Amended Complaint. Accordingly, the Court addresses Count One only as against MetLife in this Opinion and Order.

that the alleged foreclosure has not yet taken place (and has apparently been cancelled). Plaintiff must cure this deficiency in her next amended complaint.

Op. & Order [37], at 25. The Court further dismissed the financial abuse claim, with prejudice, based on the statute of limitations, which would have begun running in June 2009 when the loan was finalized and the Deed of Trust recorded, "to the extent [the claim] is based on alleged misrepresentations concerning the maximum principal amount of the loan." *Id.*, at 27. With regard to Plaintiff's allegations regarding other potential bases for liability, including the loan amount plaintiff was eligible for due to age, the unreasonableness of the loan's terms, and Plaintiff's ineligibility for the loan due to zoning, the Court stated that the allegations "are far too conclusory to support a claim for relief," and the Court dismissed them without prejudice, with leave to amend "so long as Plaintiff can plead in good faith sufficient nonconclusory facts to support such claims." *Id.*, at 25.

Plaintiff has made only two minor changes to her allegations in the financial abuse claim, and neither of these changes addresses the deficiencies the Court identified and required Plaintiff to fix. Plaintiff's financial abuse claim thus remains insufficiently pleaded for the stated reasons. Because Plaintiff has failed to attempt in good faith to address these deficiencies upon repleading, the Court dismisses Claim Seven with prejudice.

## VIII.  Claim Eight – Fraud

In Claim Eight, Plaintiff brings a common-law fraud claim against MetLife and Fidelity on largely the same bases as Claim Seven, financial abuse. MetLife moves to dismiss Claim Eight on the grounds that it is inadequately pleaded and is barred by the two-year statute of limitations, Or. Rev. Stat. § 12.110(1).

To the extent that the fraud claim in the First Amended Complaint was "based on the alleged misrepresentations concerning the maximum principal amount of the loan," the Court

dismissed the claim with prejudice as barred by the statute of limitations, for the same reasons as with the financial abuse claim. Op. & Order [37], at 26. As to the other bases for the fraud claim, the Court observed that they were "identical to those that Plaintiff alleged with respect to" the financial abuse claim. *Id.* "Accordingly, as with [the financial abuse claim], the Court finds those bases for relief in [the fraud claim] are inadequately pleaded and, therefore, must be dismissed without prejudice and with leave to amend to the extent that Plaintiff can plead in good faith nonconclusory facts that would support such claims." *Id.*

Plaintiff's only change to the fraud pleadings is an allegation that she "was unaware of the Reverse Mortgage Closing Instructions until 2017." 2d Am. Compl. [47] ¶ 257. This does not save Plaintiff's claim, state a cause of action for fraud, or satisfy the Court's instructions, for multiple reasons. First, the Court did not give plaintiff leave to amend as to a fraud claim based on the maximum principal amount of loan, so Plaintiff was not permitted to attempt to replead. Second, Plaintiff's attempt to evade the statute of limitations fails because this allegation is entirely conclusory and not entitled to be credited by the Court. *Mitchell*, 100 F.2d at 186. Third, this does not add any nonconclusory facts. Fourth, it is not clear how Plaintiff's alleged lack of knowledge regarding the "Reverse Mortgage Closing Instructions" is related to Plaintiff's knowledge of the maximum principal amount of loan.

Plaintiff has failed to state a non-time-barred claim for fraud, or to comply with the Court's instructions in repleading. The Court dismisses Claim Eight with prejudice.

## IX.   Claim Nine – Declaratory Judgment

In her final claim, Plaintiff seeks a declaratory judgment that "the tender rule does not apply here," as against all Defendants. 2d. Am. Compl. [47], at 33. Plaintiff advances various legal theories as to why she would not be required to tender the amount due on her loan in order

to bring her quiet title claim. *Id.* ¶¶ 271-84. She purports to distinguish the cases Defendants cited in arguing for application of the tender rule. Plaintiff relies exclusively on California state case law.

In its earlier Opinion and Order, the Court already determined "that Oregon courts, like the courts of many states, would find that a mortgagor who seeks to quiet title against her mortgagee must tender payment of the full amount of the debt owed." Op. & Order [37], at 10. This is now the law of the case, and the Court will continue to apply this determination throughout the case. *See, e.g.*, *Christianson v. Colt Indus. Operating Indus.*, 486 U.S. 800, 817 (1988); *Arizona v. California*, 460 U.S. 605, 618-19 (1983). Plaintiff has not provided any reason for the Court to depart from its earlier holding. Plaintiff's attempt to distinguish caselaw and to argue against the tender rule is an improper attempt to reopen an issue the Court has already decided. This applies as well to Plaintiffs' allegation that the tender rule does not apply because the sale of her property was void, which in any event is contradicted by Plaintiff's own pleadings, as Plaintiff acknowledges that the sale was cancelled. 2d Am. Compl. [47] ¶ 1.

Plaintiff may not relitigate the tender rule by bringing a declaratory judgment claim. The Court dismisses Claim Nine with prejudice.[9]

## X. Supplemental Jurisdiction

Plaintiff does not specifically allege the basis for the Court's jurisdiction; nonetheless, it appears to be federal-question jurisdiction, 28 U.S.C. § 1331, because Plaintiff brings three

---

[9] As part of her argument against the tender rule, Plaintiff makes various assertions, such as that "None of the Defendants has standing or the legal authority to conduct the trustee's sale" and "tendering the full debt allegedly owed to a Defendant would unjustly enrich such Defendant." 2d Am. Compl. [47] ¶¶ 272, 279. The Court interprets these as allegations that support Plaintiff's arguments against the tender rule, and not as independent questions that Plaintiff requests to be decided by declaratory judgment. (In any event, these allegations are conclusory, vague, and void of specific factual support.)

federal-law claims, for civil conspiracy under 18 U.S.C. § 1965, the FDCPA, and RICO. Indeed, Nationstar removed this action to federal court on the basis of federal-question jurisdiction. Not. Removal. [1] ¶ 5. Because Plaintiff is an Oregon resident, and the Zieve Defendants are Oregon residents, diversity jurisdiction would not be available. 28 U.S.C. § 1332; *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

The Court has dismissed all of Plaintiff's federal-law claims with prejudice, leaving only the state-law claims for breach of contract and quiet title. A court "may decline to exercise supplemental jurisdiction" over state-law claims where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A court's exercise of discretion under § 1367(c) is informed by the *Gibbs* factors: "economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (citing *United States Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Typically, when all federal claims are eliminated before trial, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, the state-law claims have been dismissed at the pleading stage, well before trial. The Court has considered the factors of economy, convenience, fairness, and comity, and determined that they would be best served by declining to exercise supplemental jurisdiction over the state-law claims, and that such claims should go forward, if at all, in state court.

The Court thus declines to exercise supplemental jurisdiction over the state-law claims, and DISMISSES this action with prejudice as to Claims Three through Nine, but as to Claims One and Two, without prejudice to Plaintiff pursuing those claims in state court.[10]

## CONCLUSION

For these reasons, the Court GRANTS the Zieve Defendants' Motion to Dismiss [54] Plaintiff's Second Amended Complaint [47]; GRANTS in part and DENIES in part MetLife and Nationstar's Motion to Dismiss [55]; and GRANTS MetLife and Nationstar's Request for Judicial Notice [56].

In summary, the Court declines to dismiss Plaintiff's Claims One and Two, for breach of contract and quiet title. The Court dismisses, with prejudice, Plaintiff's Claims Three through Nine, including all claims arising under federal law. Pursuant to 28 U.S.C. § 1367(c)(3) and the *Gibbs* factors, because only state-law claims remain, the Court declines to exercise supplemental jurisdiction over those remaining claims, and DISMISSES this action without prejudice to Plaintiff bringing those state-law claims in state court.

IT IS SO ORDERED.

DATED this __27__ day of ___August___, 2018.

/s/ Michael W. Mosman

MICHAEL W. MOSMAN
Chief United States District Judge

---

[10] Although Fidelity has not yet responded to the Second Amended Complaint, there are only four claims that name it. Three are state-law claims, the presence of which does not change the Court's jurisdictional analysis: Claim Three, civil conspiracy; Claim Seven, financial abuse; and Claim Eight, fraud. The fourth is Claim Nine, declaratory judgment, as to which the Court's reasoning in dismissing with prejudice applies to all Defendants, and in any event, "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201, is a procedural device only; it does not confer an independent basis of jurisdiction on the federal court." *Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1274 (9th Cir. 1982).